**Richard Bernard LINDHORST, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 80–1883.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1981.

Decided Sept. 9, 1981.

---

**5.** *Compare, United States v. Broward*, 594 F.2d 345, 351 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).

Jack S. Nordby (appointed by the court), Minneapolis, Minn., for appellant.

Roxanne Barton Conlin, U. S. Atty., Terry Wright, Asst. U. S. Atty., argued, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and LARSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Richard Bernard Lindhorst, Jr., appeals from the district court's [1] denial of his 28 U.S.C. § 2255 motion to vacate sentence following an evidentiary hearing. For reversal appellant argues the district court erred in denying him a new trial on the grounds of (1) the government's knowing use of the perjured testimony of the DeSherlia brothers, (2) newly discovered evidence that two government witnesses committed perjury, (3) ineffective assistance of counsel,[2] (4) nondisclosure of *Brady* materials, and (5) incompetence to stand trial. For the reasons discussed below, we affirm the judgment of the district court.

The following statement of facts is taken from the prior appellate opinion, *Lindhorst v. United States*, 585 F.2d 361, 363–64 (8th Cir. 1978) (footnotes omitted):

Appellant was indicted for the December 20, 1974, robbery of the Farmers Savings Bank in Wever, Iowa. Mr. Clark Holmes was appointed counsel for appellant. On appellant's motion prior to trial,

the district court ordered a psychiatric examination of appellant, the results of which led the court to find appellant competent to stand trial. On the day set for jury selection, November 3, 1975, appellant moved to dismiss Mr. Holmes as counsel on the ground that he had not adequately prepared for trial. The district court and prosecution persuaded appellant to proceed with Mr. Holmes as counsel.

At the trial, the only two prosecution witnesses who could positively identify appellant with the crime were Thomas and James DeSherlia, appellant's brothers-in-law, who allegedly participated in the robbery with appellant. In return for Thomas DeSherlia's testimony, the United States Attorney's office promised to drop bank robbery charges against him, to assist him in securing a transfer from the Florida State Penitentiary, and to recommend against imposition of the death penalty in an Alabama murder trial. In return for James DeSherlia's testimony, the government agreed to drop bank robbery charges against him and to recommend dismissal of a first degree murder charge in the Alabama murder case. The terms of the agreements were disclosed to Mr. Holmes and the court [in chambers] and stipulations briefly describing the agreements were read to the jury. [Appellant was not present in chambers during the discussion about the government's agreements with the DeSherlia brothers.]

Appellant was convicted by a jury of bank robbery in violation of 18 U.S.C. § 2113(d) and sentenced to twenty years imprisonment. The conviction was affirmed on direct appeal. *Lindhorst v. United States*,

---

\* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Donald E. O'Brien, United States District Judge for the Southern District of Iowa. The district judge who presided over appellant's trial, sentencing and initial § 2255 motion recused himself.

2. As noted in the prior opinion, although the same facts underlie the allegations of knowing use of perjury, newly discovered evidence, and ineffective assistance of counsel, each allegation is an independent ground for relief. *Lindhorst v. United States*, 585 F.2d 361, 365–66 (8th Cir. 1978). The district court discussed each allegation separately in its memorandum opinion. *Lindhorst v. United States*, No. Civil 76–376–2 (S.D. Iowa Sept. 10, 1980).

No. 75–1928 (8th Cir. May 13, 1976). Appellant then filed a *pro se* 28 U.S.C. § 2255 motion to vacate sentence, alleging the same grounds presented in this appeal with the exception of the *Brady* materials claim.[3] The district court summarily dismissed the motion. We reversed and remanded for an evidentiary hearing on all the issues. *Lindhorst v. United States, supra,* 585 F.2d at 365–66. On remand the district court permitted appellant to amend his motion, held an evidentiary hearing, and, after thoroughly addressing appellant's claims in a lengthy memorandum opinion, denied the motion. *Lindhorst v. United States,* No. Civil 76–376–2 (S.D.Iowa Sept. 10, 1980) (order). This appeal followed.

### I. *Use of Perjured Testimony*

■ Appellant argues that the district court erred in refusing to grant a new trial on the ground that the government knowingly used perjured testimony. This allegation rests largely upon the sworn affidavits and testimony at the evidentiary hearing of Thomas and James DeSherlia. The DeSherlias testified that they falsely accused appellant of participating in the bank robbery because of threats and promises made by the government in exchange for their testimony.

"The law is quite clear that 'in order to vacate the judgment and sentence on such grounds, two elements must be established: first, the use of perjured testimony, and second, knowledge by the prosecuting officials at the time the testimony was used that it was perjured.'" *United States v. Conzemius,* 611 F.2d 695, 697 (8th Cir. 1979) (emphasis omitted), *citing Holt v. United*

States, 303 F.2d 791, 794 (8th Cir. 1962), *cert. denied,* 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132 (1963). Here, the district court found that neither appellant's testimony nor that of his other witnesses established that the government's attorney or any member of the prosecution team knew at the time of trial that the DeSherlia brothers were lying. *Lindhorst v. United States, supra,* No. Civil 76–376–2 (slip op. at 7). Both DeSherlia brothers testified at the evidentiary hearing that they had not told the government's attorney or Mr. Holmes that they lied at the trial.[4] The then government's attorney and Mr. Holmes testified at the evidentiary hearing that they did not know at the time of trial that the DeSherlias were not telling the truth.

Thus, assuming for the purposes of argument that the DeSherlia brothers in fact committed perjury, the district court did not err in dismissing this claim because appellant failed to establish the government's knowing use of the perjured testimony.

### II. *Newly Discovered Evidence*

■ Appellant next argues that the district court erred in refusing to grant him a new trial on the ground of newly discovered evidence, that is, the allegation that the DeSherlia brothers, the two chief government witnesses, committed perjury in identifying appellant as the third bank robber. Appellant emphasizes that the DeSherlia brothers were the only witnesses who positively identified appellant as one of the bank robbers; the other government witnesses, including several bank employees, were unable to make positive identifications.

---

**3.** Appellant originally argued that the government failed to produce evidence under the Jencks Act, 18 U.S.C. § 3500. Such a claim is not cognizable in a § 2255 motion. On appeal this court followed counsel's argument that appellant's *pro se* motion should be read broadly and that appellant had misclassified *Brady* material as Jencks material. The nondisclosure of *Brady* material is cognizable in a § 2255 motion. We instructed the district court in the interest of fairness and judicial economy to permit appellant to amend his motion to clarify the nature of the evidence which allegedly should have been disclosed. *Lindhorst v. Unit-*

ed States, supra, 585 F.2d at 366, *citing Houser v. United States,* 508 F.2d 509, 515, 517–18 (8th Cir. 1974).

**4.** The district court acknowledged that Thomas DeSherlia indicated in answer to one of the interrogatories that the government's attorney knew what his testimony at trial would be and that it was false. The district court discredited the answer as unexplained and in direct conflict with Thomas DeSherlia's testimony at the evidentiary hearing. *Lindhorst v. United States, supra,* No. Civil 76–376–2 (slip op. at 7).

"When newly discovered evidence is the ground for a § 2255 motion, the district court should apply the same substantive test which governs a motion for a new trial under Fed.R.Crim.P. 33 premised upon the same ground." *Lindhorst v. United States, supra,* 585 F.2d at 365 n.8, *citing Everitt v. United States,* 353 F.2d 532 (5th Cir. 1965).

There are five prerequisites which must ordinarily be met to justify the grant of a new trial on the ground of newly discovered evidence: "(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal."

*United States v. McColgin,* 535 F.2d 471, 476 (8th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976), *citing United States v. Pope,* 415 F.2d 685, 691 (8th Cir. 1969), *cert. denied,* 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970). However, as noted in *United States v. Runge,* 593 F.2d 66, 73 (8th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979), we must modify this test when the newly discovered evidence involves a claim of perjury on the part of prosecution witnesses.

Unlike the stricter standard of materiality used in new trial motions based on discovery of new evidence or failure of the prosecution to disclose favorable evidence, knowing use of perjured testimony requires that a conviction be set aside "if there is any reasonable likelihood that the

false testimony could have affected the judgment of the jury." Where the use of known perjury involves prosecutorial misconduct, it constitutes "corruption of the truth-seeking function of the trial process." The government may be responsible even if the prosecutor did not actually know the testimony was perjured, but should have known, or if he or she did not elicit false testimony, but allowed it to go uncorrected when it appeared. Even false testimony which merely impeaches a witness' credibility may require a new trial.

*Id.* (citations omitted); *see United States v. Agurs,* 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397–98, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).

As found by the district court, there is little question that the evidence was newly discovered, that appellant was diligent, that the evidence was material to the issue of appellant's participation in the bank robbery, or that there was a reasonable likelihood that the allegedly perjured testimony could have affected the judgment of the jury. *Lindhorst v. United States, supra,* No. Civil 76–376–2 (slip op. at 10). It is, however, the government's *knowing* use of perjured testimony which is fundamentally unfair. *See United States v. Agurs, supra,* 427 U.S. at 103, 96 S.Ct. at 2397; *United States v. Conzemius, supra,* 611 F.2d at 697. Here, the district court found, after an evidentiary hearing, that appellant failed to establish two facts essential to his allegation of newly discovered evidence: that the DeSherlia brothers in fact committed perjury[5] or that the government knew or should

---

**5.** "Courts look upon recantation with suspicion." *Johnson v. United States,* 291 F.2d 150, 154 (8th Cir.), *cert. denied,* 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961). The district court concluded that neither the DeSherlia brothers nor Craig McClaren, a convicted murderer serving a life sentence in Alabama who had shared a jail cell with the DeSherlias and who allegedly had heard the DeSherlias admit they lied during appellant's trial, were credible witnesses. *Lindhorst v. United States, supra,*

No. Civil 76–376–2 (slip op. at 8–10). As noted by the district court, the DeSherlia brothers had no respect for the truth or the oath or the law; they had extensive criminal records; they testified against appellant after completing favorable agreements with the government. In addition, Thomas DeSherlia admitted that he hated appellant and wanted to kill him. Needless to say, it was extremely difficult to determine whether the DeSherlias' trial testimony or their recantations were truthful. The district

have known that they were lying. These factual findings are not clearly erroneous. Under these circumstances appellant failed to establish any basis for relief; the district court did not err in dismissing appellant's claim.

### III. *Ineffective Assistance of Counsel*

Appellant next argues that the district court erred in dismissing his claim for post-conviction relief on the ground that he was denied effective assistance of counsel. Appellant argues that his attorney was not adequately prepared for trial, failed to inform him about the government's agreements with the DeSherlias, and improperly signed an affidavit in support of a motion for a psychiatric examination. The district court carefully reviewed appellant's allegations of ineffective assistance of counsel and properly found no basis for relief.

In this circuit, the evaluation of a petition alleging ineffective assistance of counsel involves a two-step process. The petitioner must first show that his [or her] attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances. Second, the petitioner must demonstrate that he [or she] was materially prejudiced in the defense of his [or her] case by the actions or inactions of his [or her] counsel.

*United States v. McMillan*, 606 F.2d 245, 247 (8th Cir. 1979) (per curiam) (citations omitted). "The exercise of reasonable professional judgment, 'even when hindsight reveals a mistake in that judgment, does not render a lawyer ... lacking in competence in rendering his services.' There is a presumption that counsel has rendered effective assistance. To overcome the presumption, [the petitioner] 'must shoulder a heavy burden.'" *United States v. Blue*

*Thunder*, 604 F.2d 550, 554 (8th Cir.), *cert. denied*, 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979), *citing Catches v. United States*, 582 F.2d 453, 456–57 (8th Cir. 1978) (citations omitted).

■ After evaluating each of appellant's allegations of ineffective assistance of counsel, the district court concluded that in each instance appellant's attorney acted with the customary skills and diligence that a reasonably competent attorney would have exercised under similar circumstances and that appellant was not materially prejudiced in the presentation of his defense [6] by the attorney's action or inaction. *Lindhorst v. United States, supra*, No. Civil 76–376–2 (slip op. at 12–22). With respect to his general claim that his attorney was not adequately prepared for trial, appellant specifically argues that his attorney briefly met with him only twice, had prejudged the case as an "eyewitness identification" case, and failed to interview and investigate prospective government and defense witnesses. We agree with the district court that the attorney could have explained in greater detail to appellant the probable development of the prosecution's case and his preparation of the defense. Under the circumstances, however, the failure to more fully discuss the case does not constitute a breach of the duty to act as a reasonably competent attorney. The present case involved relatively straightforward factual questions and, as accurately characterized by the attorney, was essentially an "eyewitness identification" case. In particular, we note that the attorney could not have satisfied *before trial* appellant's understandable desire to know the specific nature of the government's case against him. *See* 18 U.S.C. § 3500.

---

court was not convinced that their recantations were sincere. *Id.*

**6.** To establish prejudice

the petitioner must shoulder an initial burden of showing the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the [petitioner] either on cross-examination or in his [or her] case-

in-chief at the original trial. Once this showing is made, a new trial is warranted unless the court is able to declare a belief that the omission of such evidence was harmless beyond a reasonable doubt.

*Reynolds v. Mabry*, 574 F.2d 978, 980 (8th Cir. 1978), *citing McQueen v. Swenson*, 498 F.2d 207, 220 (8th Cir. 1974).

■ Appellant's allegation that his attorney failed to interview and investigate prospective witnesses is more troublesome.

[U]nder some circumstances a failure to interview prospective witnesses may be a breach of the duty to act as a reasonably competent attorney. Nevertheless, we have recognized that "in particular cases, an attorney's professional judgment may lead him to decline to interview some or all of the government's witnesses and to rely on other sources of information. Such an exercise of professional judgment will be given the same deference as any other."

*United States v. McMillan, supra,* 606 F.2d at 247 (citations omitted), *citing Thomas v. Wyrick,* 535 F.2d 407, 413 n.7 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). We agree with the district court that in the present case the attorney's failure to interview certain prospective witnesses was a reasonable exercise of professional judgment. In particular, the attorney's failure to interview appellant's wife, a fellow employee who saw appellant in a nearby town on the morning of the bank robbery, and a hypothetical sales clerk in St. Louis[7] must be evaluated in light of the fact that the attorney already had four alibi witnesses for the defense.

Similarly, the attorney's failure to interview the bank employees and Thomas DeSherlia were professional judgment decisions. The attorney knew the general substance of the government's case and that the bank employees had been unable to make any positive identifications of the bank robbers. The attorney also knew the substance of Thomas DeSherlia's testimony and that Thomas DeSherlia and appellant were bitter adversaries of long standing. Like the district court, we conclude that it would have been appropriate to interview these witnesses; however, under the circumstances the attorney's failure to do so did not materially prejudice the presentation of appellant's defense. The weakness of the bank employees' identification and the hostility and self-interest apparent in Thomas DeSherlia's implication of appellant in the bank robbery were clearly brought out before the jury. Further, the attorney cannot be faulted for failing to interview James DeSherlia. James DeSherlia was called by the government as a rebuttal witness at the last minute.

■ Appellant's next allegation of ineffective assistance of counsel is that his attorney did not tell him that the government had made certain agreements with the DeSherlias in exchange for their testimony against him. It is difficult to understand the focus of this allegation. As noted by the district court, it is unclear from the record whether appellant was present when the district judge, the government attorney, and the defense attorney discussed the details of the agreements and, if not, whether the defense attorney personally informed appellant of the agreements. However, the record clearly indicates that the details of the agreements, which were favorable to the DeSherlia brothers, were described to the jury, in appellant's presence, and that the defense attorney thoroughly discussed the significance of the agreements and their impact on the DeSherlias' credibility in closing arguments. Under the circumstances we can discern no breach of the duty to act as a reasonably competent attorney and no possible prejudice to appellant's defense.

■ On a related point, appellant challenges his attorney's failure to cross-examine James DeSherlia about his participation in the bank robbery. Appellant argues that Thomas DeSherlia did not identify James DeSherlia as the third bank robber and that proper cross-examination would have revealed that James DeSherlia in fact did not participate in the robbery, knew nothing about the bank robbery, and testified only

---

7. Appellant also argued that his attorney should have obtained documentary evidence in the form of sales receipts. Appellant argues that such evidence would have supported his alibi defense that he was shopping in St. Louis at the time of the bank robbery. Appellant's alibi defense was substantiated by four witnesses.

in order to corroborate his brother's testimony and to take advantage of the government's agreement. We agree with the district court that the decision to briefly cross-examine James DeSherlia was a tactical decision. James DeSherlia testified that he had robbed the bank in question with his brother Thomas and appellant; under the circumstances, further cross-examination might have served only to emphasize this confession. As discussed above, the jury had already been informed of James DeSherlia's criminal situation and the agreement with the government.

■ Appellant also argues that his attorney improperly signed an affidavit in support of a motion for a psychiatric examination. We can find no merit in this allegation. As noted by the district court, the record clearly shows that appellant's attorney prepared and signed an affidavit which described appellant as "laboring under a mental disability based on [appellant's] vague and inappropriate responses" to support the motion for a psychiatric examination. The attorney may have overstated appellant's actual mental condition. While we would agree that preparing an inaccurate affidavit would be improper, we fail to see how such an exaggeration prejudiced appellant. Under the circumstances the affidavit only served to assist appellant in obtaining a psychiatric examination.

## IV. Nondisclosure of Brady Materials

Appellant next argues that the government failed to disclose evidence as required by *Brady v. Maryland*, 373 U.S. 83, 86–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), and that this failure to disclose resulted in a denial of due process.

It is well established that a prosecutor has a duty to disclose to the accused all favorable evidence within his control and knowledge that it is material to the defense. . . .

. . . As stated by the Supreme Court in *Moore [v. Illinois*, 408 U.S. 786, 794–95 [92 S.Ct. 2562, 2568, 33 L.Ed.2d 706] (1972)]:

> The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material to either guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense,[8] (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.

*Ogden v. Wolff*, 522 F.2d 816, 820 (8th Cir. 1975) (citations omitted), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976).

■ In light of appellant's specific allegations of nondisclosure,[9] it appears that the present case involved exculpatory information in the possession of the prosecution but unknown to the defense attorney. Under such circumstances, "the standard of materiality that governs [the prosecutor's] obligation to disclose exculpatory evidence

8. "Suppression" in the context of *Brady* materials really means nondisclosure. *See United States v. Agurs*, 427 U.S. 97, 106–07, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).

9. Appellant specifically alleges nondisclosure of the following as *Brady* violations: (1) a memorandum indicating that James and Thomas DeSherlia had initially refused to testify against appellant; (2) information that Thomas DeSherlia refused to testify against his brother James; (3) information that Thomas DeSherlia agreed to testify in part on the condition that he be allowed to see his wife and that his wife was allowed to visit him after he testified; (4) information that Thomas DeSherlia's wife had received money from the government (Mrs. DeSherlia had been subpoenaed as a witness and was paid a mileage allowance, hotel allowance, and a witness appearance fee); (5) information that the government had threatened the DeSherlias with the death penalty in an Alabama murder case if they refused to testify against appellant; (6) information that the DeSherlia brothers were allowed to talk together before James DeSherlia testified; (7) an FBI agent's reports indicating that, during interrogation in Nashville, Tennessee, James DeSherlia had answered questions in a manner which suggested that he did not know appellant and would never testify against him; (8) information about the granting of immunity to the DeSherlias; and (9) a statement by Thomas DeSherlia describing appellant as "crazy" and allegedly relevant to appellant's competency to stand trial.

... [is] the customary harmless-error standard." *United States v. Agurs, supra,* 427 U.S. at 111–12, 96 S.Ct. at 2401. We must begin by examining the evidentiary value of the suppressed or nondisclosed evidence.

For example, ... the suppression of any evidence which is probative on the issue of guilt or innocence can constitute a denial of due process. However, ...

[a]s to evidence not of that character and having admissibility only for the purpose of impeachment or credibility attack, nondisclosure or suppression, to be violative of due process, would in our opinion, unless the situation is otherwise tainted, have to be of such inherent significance as to represent fundamental unfairness.

In order to meet the "fundamental unfairness" test ..., the defendant must show that "there was a significant chance that [the suppressed evidence], developed by skilled counsel as it would have been, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction."

*Ogden v. Wolff, supra,* 522 F.2d at 822 (citations omitted). In other words, "if the omitted evidence [when evaluated in the context of the whole record] creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *United States v. Agurs, supra,* 427 U.S. at 112, 96 S.Ct. at 2402.[10] *But see id.* at 114–22, 96 S.Ct. at 2402–06 (Marshall, J., dissenting) (objecting that "the Court so narrowly defines the category of 'material' evidence embraced by the duty [to volunteer exculpatory evidence] as to deprive it of all meaningful content").

■ Here, the district court carefully considered each of appellant's allegations and concluded that in each instance the government's nondisclosure did not amount to a denial of fundamental fairness. *Lindhorst v. United States, supra,* No. Civil 76–376–2 (slip op. at 23–36). Under the circumstances, such a finding is the equivalent of a finding of harmless error. All of the allegations except the last one involve information which would have been arguably material to impeach the DeSherlia brothers. As discussed above, the credibility of the DeSherlia brothers and their agreements with the government were fully explained to the jury. The district court did not err in dismissing these claims.

## V. *Competency to Stand Trial*

■ Appellant next argues that he was incompetent to stand trial. Pursuant to our directions, the district court permitted appellant to amend his § 2255 motion to include this allegation. Incompetency to stand trial is a proper ground for relief under 28 U.S.C. § 2255. *See Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956) (per curiam). Appellant challenges the district court's failure to hold a hearing on the issue of competency and the adequacy of his psychiatric examination conducted at the Federal Medical Center in Springfield, Missouri.

Soon after his indictment appellant filed a motion for a psychiatric examination in order to determine his competency to stand trial. The district court granted the motion and sent appellant to the Federal Medical Center in Springfield for a psychiatric examination. The psychiatric staff at the Federal Medical Center reported that appellant was mentally competent and returned appellant to the district court. At the sentencing proceedings appellant and his attorney called the attention of the district court to the presentence report which referred to appellant's history of institutionalization for mental illness. The district court indi-

---

**10.** The defendant does *not* have to "satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal." *United States v. Agurs, supra,* 427 U.S. at 111, 96 S.Ct. at 2401 (footnote omitted). As explained in *Agurs,*

[i]f the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice [by disclosing exculpatory evidence].

*Id.*

cated that he had reviewed the medical reports, not because he questioned appellant's competence to stand trial but as an aid in sentencing, and imposed sentence. The medical reports from the Federal Medical Center did not refer to any previous psychiatric history.[11]

It is unclear from appellant's amended § 2255 motion at exactly which stage in the judicial proceedings he believes that the district court should have held a competency hearing. For the reasons discussed below, we find no basis for relief.[12]

The district court's failure to hold a competency hearing on the basis of the information about appellant's psychiatric history did not constitute a denial of due process under *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

> Under the rule of *Pate v. Robinson*, ... a due process evidentiary hearing is constitutionally compelled at any time that there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. "Substantial evidence" is a term of art. "Evidence" encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is "substantial" if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflict-

ing evidence. The function of the trial court in applying *Pate's* substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? Its sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court *sua sponte* must order an evidentiary hearing on the competency issue.

*Moore v. United States*, 464 F.2d 663, 666 (9th Cir. 1972) (per curiam); *see Rand v. Swenson*, 501 F.2d 394, 395 (8th Cir. 1974) (per curiam); *Jones v. Swenson*, 469 F.2d 535, 539 (8th Cir. 1972), *cert. denied*, 412 U.S. 929, 93 S.Ct. 2756, 37 L.Ed.2d 156 (1973).

Under the circumstances the revelation of appellant's past history of institutionalization was not sufficient to raise a reasonable doubt about appellant's competency to stand trial. Unlike *Moore*, in which the psychiatrist's report itself contained conflicting evaluations of competency and was supplemented by psychiatric reports from federal prison authorities, 464 F.2d at 665–66, the medical reports in the present case are consistent in their evaluation of appellant as mentally competent. As noted by the district court, appellant undoubtedly had serious mental problems from 1957 through 1968; however, there was no indication that appellant had recently been institutionalized. Nor was there any contemporaneous evidence in conflict with the

---

11. The Springfield psychiatric report notes that appellant had denied any previous psychiatric history. The district court at the evidentiary hearing expressly asked appellant whether he had discussed his psychiatric history with the Springfield staff. Appellant answered, "I didn't go into it at first. I did mention it at a later staff meeting but I didn't go into it." *Lindhorst v. United States, supra*, No. Civil 76–376–2 (slip op. at 37 n.30). At the evidentiary hearing the defense attorney testified that appellant had never informed him of his psychiatric history. *Id.* at 39 n.31. Although the pretrial motion for a psychiatric examination contains a reference to appellant's prior psychiatric history, the defense attorney evidently did not know that appellant had in fact been peri-

odically in mental hospitals until he reviewed the presentence report.

The record indicates that appellant had in fact been periodically institutionalized during 1957–1968.

12. The district court did not err in failing to hold a hearing after the Springfield staff reported that appellant was mentally *competent*. "By the express terms of [18 U.S.C. §] 4244, such a hearing and judicial determination [of present mental competency] are required only if the psychiatrist's report indicates that the defendant is presently mentally *incompetent*." *Stone v. United States*, 358 F.2d 503, 506 (9th Cir. 1966) (emphasis added, citations omitted); *see* 18 U.S.C. § 4244.

Federal Medical Center's psychiatric finding of competency. *Compare Stone v. United States*, 358 F.2d 503, 504–05 (9th Cir. 1966) (prison medical officer's reports and Federal Medical Center report found petitioner so seriously mentally ill shortly after sentencing that petitioner was probably mentally incompetent at the time of trial). At the § 2255 evidentiary hearing appellant's attorney testified that appellant had not behaved in a manner that raised any questions of competency.

Appellant makes no specific objections to the adequacy of his psychiatric examination at the Federal Medical Center. The record indicates that appellant was in the Federal Medical Center about two weeks and had been interviewed by the staff. Under the circumstances we cannot say that appellant's psychiatric examination was inadequate. Appellant's relatively brief stay at the Federal Medical Center does not substantiate his allegation of perfunctory evaluation. Less than two weeks of observation is not inconsistent with an adequate psychiatric examination, particularly in light of appellant's diagnosis.

We also find that the district court's ultimate conclusion that appellant was competent at the time of trial is amply supported by the record. The Federal Medical Center reports, the evidentiary hearing testimony of appellant's defense attorney and other witnesses, and appellant's demeanor during trial and during the evidentiary hearing support the district court's finding of competence.

Accordingly, the judgment of the district court denying the § 2255 motion is affirmed.[13]

---

13. We find no merit in the issue raised by appellant in his *pro se* brief on appeal that the district court improperly conducted the evidentiary hearing in a closed courtroom. The transcript of the evidentiary hearing indicates that the proceedings were held in open court and in the presence of appellant.