James BARRETT, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. No. 90–155–P.

United States District Court,
D. Maine.

April 30, 1991.

James Barrett, pro se.

Kenneth J. King, Boston, Mass., for petitioner.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., for respondent.

## MEMORANDUM AND ORDER ON PETITION TO VACATE SENTENCE

GENE CARTER, Chief Judge.

On April 7, 1984, Petitioner was convicted by a jury in this Court of armed bank robbery in violation of 18 U.S.C. § 2113(d). He filed a motion for judgment of acquittal and a motion for a new trial, both of which were denied on June 26, 1984. *United States v. Barrett,* 598 F.Supp. 469 (D.Me. 1984). The First Circuit Court of Appeals affirmed the conviction and the denial of Petitioner's post-trial motions on June 21, 1985. *United States v. Barrett,* 766 F.2d 609 (1st Cir.1985). Petitioner now seeks to vacate or set aside his sentence under 28 U.S.C. § 2255. He asserts that there is newly discovered evidence necessitating a new trial, that prior to trial the Government suppressed significant exculpatory evidence, and that he was denied effective assistance of counsel. Petitioner seeks an evidentiary hearing and the disqualification in the hearing of Mark Terison, the Assistant United States Attorney who prosecuted the Barrett case. Section 2255 provides that the Court must grant a hearing on the petition unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.

### *Suppression of Evidence*
#### A.

The Government's chief witness at trial, and the only witness linking Petitioner to the offense, was Joseph Aceto, who testified that he robbed the bank along with Petitioner and two other individuals. At the time of trial, Aceto was in custody for a variety of offenses and under a state indictment for a murder committed while he was in custody. At trial Petitioner was prohibited from asking Aceto about the pending murder charge and any expectation of leniency he might have concerning it based on his federal cooperation. The Court excluded such inquiry "into this most prejudicial matter," *Barrett,* 766 F.2d at 615, because Petitioner, out of the presence of the jury, was unable to establish a foundation for the claimed hope of leniency.

Petitioner asserts that he was unable effectively to impeach Aceto because the Government failed to disclose documents showing that Aceto hoped to receive assistance in the state murder prosecution in return for his testimony against Petitioner.

Petitioner points specifically to a January 18, 1984 memorandum written by the Government prosecutor, Mark Terison, which provided:

> On or about January 18, 1984 I talked with Tommy Brown who is a state of Arkansas prosecutor responsible for the murder prosecution of Joseph Aceto.... Brown also said that his case against Aceto was not a rock solid one and that both he and Aceto may be interested in reaching some sort of plea arrangement whereby Aceto would agree to come to Maine to testify in the Barrett case.

Petitioner also relies on newly discovered documents showing that Brown aided Terison in the federal prosecution by relaying communications between Terison and Aceto. Petitioner suggests that from this conduct and the fact that Brown obtained a continuance of the state murder prosecution until after the Barrett trial, Aceto would necessarily have expected some benefit in his state prosecution in return for his testimony against Barrett.

■ As the Court of Appeals stated in the opinion on Petitioner's direct appeal, a defendant has a right "to cross-examine an accomplice as to the nature of any agreement he has with the government or any expectation or hope that he may have that he will be treated leniently in exchange for his cooperation." *Barrett*, 766 F.2d at 614. In the section 2255 context, if a prosecutor fails to disclose information that might have been helpful in conducting such a cross-examination, a constitutional violation occurs only if "the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). The Supreme Court explained further: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3383.

■ By affidavit, Mark Terison asserts that he is unaware of any promises, rewards, inducements or threats made to Aceto beyond those testified to at trial,[1] that he is unaware of any inducements made to Aceto with respect to his testimony in the Barrett trial, and that neither he nor his office made any agreement with Aceto to secure favorable action for him on the pending murder charge. There is no evidence in the record showing an explicit agreement or promises or inducements with regard to Aceto's testimony at the Barrett trial. Petitioner urges the Court to infer an agreement between the prosecutors and Aceto in the same way a jury might infer an agreement between co-conspirators. Inference of such an agreement would require examination of the understandings of both parties to the alleged agreement. For purposes of this discussion, however, only the understanding of Aceto is pertinent, for it is the impeachment of Aceto's credibility that Petitioner claims was impeded by lack of access to the undisclosed documents.

Terison's memorandum recounts, at most, his recollection of an oral representation by an Arkansas prosecutor Brown concerning Brown's and Aceto's tentative interest in reaching some sort of plea arrangement that would include testimony in the Barrett case. Clearly, the *prosecutor's* representation that Aceto may be interested does not reach the level of an understanding or agreement which should have been disclosed. Neither, by itself, does it demonstrate a hope or expectation of leniency by Aceto. Rather, access to the memo would possibly prompt inquiry into whether prosecutor Brown was indeed expressing Aceto's interest or merely his own.

In some of the other now-disclosed documents, Aceto responds to questions about the federal prosecution presented to him by state prosecutor Brown. In one letter, Aceto says he has enclosed requested information. Without tying the subject in any way to the provision of information, Aceto *rejects* a plea agreement. In another document Brown writes to Aceto concerning a

---

1. At trial Aceto described a 1976 agreement with the Government whereby he would testify in criminal cases and the Government would aid him in state prosecutions.

plea agreement for 20 years consecutive to his current sentence without mentioning a *quid pro quo*. The letter contains a handwritten postscript that Brown has received a letter but not other mail from Aceto, "[s]o, I am getting the questions and putting them on separate sheets." While these documents establish a relationship between the state and federal prosecutors concerning the state prisoner Aceto and the federal prosecution, they do not, by themselves, establish an agreement or express a hope or expectation of leniency by Aceto in return for the information being provided.

Petitioner argues: "One cannot imagine that Brown would have offered to assist, and assisted Terison as he did without Aceto coming to the obvious conclusion that, in return for his testimony against Barrett, Terison would intercede on his behalf in his state prosecution." Petitioner's Amended Motion, at 12. The Court cannot find, however, that the documents, and in a broader sense the conduct of Brown and Terison, provide the basis for the inference suggested by Petitioner any more than it could, at trial, allow the pendency of the murder charge alone to provide an adequate foundation for an expectation of leniency. The documents are devoid of expression of Aceto's feelings or understandings, except for his rejection of a plea agreement, which, while juxtaposed with the provision of information in some of the communications, is not textually linked to it in any way.[2]

Access to these documents alone could not establish bias on the part of Aceto. As with the Terison memorandum, however, access to the documents could well have prompted inquiry into why Aceto provided the information and into his understanding of his relationship to the prosecutors.[3]

Even if these documents and those concerning the scheduling of the state trial might have been helpful to the defense in conducting the cross-examination of Aceto, the Court cannot find that they were material in the sense necessary to constitute a constitutional violation. The undisclosed materials plainly raise the question of what expectations Aceto might have had concerning his state prosecution given his assistance in the federal prosecution. As the trial record, the Court's opinion on post-trial motions, and the Court of Appeals' opinion demonstrate, Petitioner had ample opportunity at trial to inquire on this very point. *See United States v. Barrett*, 598 F.Supp. at 474–75; *United States v. Barrett*, 766 F.2d at 615. As the Court of Appeals explained:

> After making its initial exclusionary ruling, the court was persuaded to allow defense counsel to call back Aceto, at considerable expense and trouble to the court and government, ..., so that defense counsel could try to establish out of the jury's presence a foundation for the claimed hope of leniency.... [D]efense counsel never asked the crit-

**2.** The Court finds noteworthy the fact, demonstrated by Petitioner's submissions, that Aceto rejected a plea agreement on the murder charge, before the trial in this case, but after the above proffered conduct of Brown and the continuance of his own trial. A few months after Petitioner's trial, Aceto went to trial on the murder charge. Thus, he never reached an agreement that would have allowed a plea in return for his testimony at the Barrett trial.

The Court rejects Petitioner's suggestion that undisclosed inducements can also be inferred from certain post-trial events purportedly benefitting Aceto. Specifically, Petitioner argues that Aceto pled guilty and received a relatively light sentence for the homicide and that Aceto was readmitted to the witness protection program. After Aceto's trial resulted in a hung jury, he did plead guilty. Given the intervening trial, the Court cannot accept Petitioner's assertion that the plea and consequent sentence were

the result of an agreement or inducement before Barrett's trial concerning Aceto's testimony against Barrett. The Court also rejects out of hand the suggestion that Aceto's readmission to the witness protection program was a reward for testimony. Aceto's safety was jeopardized as a result of certain disclosures at Barrett's trial, and the Court took an active role in trying to assure his subsequent safety.

**3.** Despite Petitioner's assertion that no other scenario can be imagined than an expectation of leniency, many other possible explanations of Aceto's decision to cooperate and testify come to mind. For example, the Court can readily "imagine" that Aceto expected nothing from the conduct of the prosecutors and his participation in the Barrett trial other than a break from the tedium of imprisonment. Further inquiry would have been necessary to interpret the very ambiguous documents.

ical question whether the government had made any agreements with respect to the pending charge or whether Aceto had some hope of leniency with respect thereto.

*Barrett,* 766 F.2d at 615.

Counsel clearly knew at trial what he had to establish to gain admission of testimony concerning the pending murder conviction. Given the extraordinary opportunity Petitioner had to establish the critical foundational point, the Court cannot find that having had these documents in his possession would have made Petitioner's counsel any more likely or able to ask the required questions. Therefore, there is not "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

### B.

■ Petitioner also argues that he was unconstitutionally denied access to the transcript of an interview of Aceto conducted on January 26, 1984, by Terison and FBI agent, William Crate. He specifies three specific purposes for which he could have used the transcript to impeach Aceto: 1) to show that Aceto had lied when he testified that he had not seen Barrett again after the robbery; 2) to show that Aceto's identification of Barrett had been influenced by suggestive police methods; and 3) to show that Aceto twice confused Barrett with Manning, a co-defendant. As the Court has previously stated, if a prosecutor fails to disclose information that might have been helpful in conducting such a cross-examination, a constitutional violation occurs only if "the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985).

On cross-examination Aceto testified that he had never seen Barrett again after the robbery. The previously undisclosed transcript shows that during the January 1984 interview he testified that Barrett had come around a few times after the robbery asking if there were to be more robberies. Petitioner acknowledges that he did have the FBI "302" report of the interview. Having compared the transcript and the 302 on this point, the Court finds that the 302 was an apt representation of Aceto's statement made at the interview and that counsel used the 302 effectively at trial to cross-examine Aceto.

Although at trial Aceto tried at one point to say that his testimony about seeing Barrett after the robbery differed from his prior statement because the 302 was merely a summary, he twice admitted telling Crate that he had seen Barrett two or three times after the robbery. Moreover, the defense put the 302 in evidence and called FBI Agent Crate as a witness. Crate testified that Aceto had told him that he had seen Barrett several times after the robbery. Petitioner, therefore, was able to establish with the 302 the inconsistency between Aceto's initial trial testimony and his interview testimony. Since that is the point he claims he would have made with the transcript, he was not prejudiced by the Government's failure to disclose the transcript, and its availability would not have affected the result of the trial in any way.

Petitioner also suggests that he was prevented from showing that the interrogation of Aceto concerning the bank robbery had used suggestive methods to focus on Petitioner. He argues that the transcript, which indicated Aceto had been shown photos of Barrett, would have aided him in making this point. First, the Court notes that Aceto never denied that he had been shown photos. The record also clearly shows that counsel was not prevented from proving Aceto had been shown photos of Barrett. He was permitted to and began to inquire about photos, but he desisted without asking if Aceto had been shown such photos after an objection to the relevance of the inquiry was *overruled.*

Petitioner's argument that had he known, rather than suspected, photos had been displayed he would have been able to show suggestiveness of the procedure is also highly dubious. The transcript of the interview indicates that it was Aceto rather

than the investigators who focused on Petitioner. Early in the interview Aceto stated that he first met Barrett in the late summer of 1975. Ex. F at 1. Barrett testified at trial that he had met Aceto in 1975 so there is no doubt that they knew one another. Later in the interview Crate asked whether Aceto identified Barrett during this interrogation in 1976 from a photograph:

> Oh, when you were interviewed by the State Police and Dan Quigley in July of 76 and you talked about Barrett and the bank robbery. How did you identify Barrett, was there a photograph shown to you somewhere along the line. I mean just because somebody says Jimmy Barrett

Aceto responded:

> Well, I believe, *I described him first and then ah I was given a collection of photos and asked to pick a picture of him out of the photos.* I believe there was a Walpole State Prison picture along with the I [sic] believe they were all pictures of that nature.

Ex. F at 29. Nothing in the procedure described suggests that the investigators focused on Barrett or suggested him to Aceto. Rather, it appears that Aceto had named Barrett and described him specifically before any photos were shown. The photo spread appears from the description to have been unobjectionable. Given the apparently innocuous nature of the transcript as it pertains to photos of Barrett shown to Aceto, the Court cannot say that there is a reasonable probability that, had the transcript been disclosed, the result of the trial would have been different.

Petitioner suggests another reason the transcript should have been disclosed. Specifically, he argues that in two places the transcript shows Aceto confusing Manning and Barrett and that such confusion would have been important exculpatory or impeachment material. The instances to

which Petitioner refers are ones in which Aceto said, "Levasseur and Manning came, ah Levasseur and Barrett, ..." and "Ah, I believe Man, excuse me Barrett ..." Assuming that Aceto's credibility could have been impeached more than nine years after the bank robbery by two instances in an interview in which he began to say Manning and corrected himself to say Barrett, the Court cannot find that disclosure of this transcript would have made any difference in the result of the trial. Aceto was thoroughly impeached by far more substantial means: his mental illness, inconsistencies between trial and previous testimony, his prior criminal behavior, and his agreement with the government.[4] Yet the jury believed him. It is highly unlikely that the jury would have found him any less believable because of two slips of the tongue in a recounting nine years after the event. Thus, the evidence would merely have been cumulative, if it impeached at all. This evidence would not have been the straw that broke the camel's back, *see United States v. Wright*, 625 F.2d 1017, 1020 (1st Cir.1980) because the possibility of these ambiguous corrections being used to advantage by counsel is so slight. The Court's confidence in the outcome of the trial is not diminished in any respect by this trivial matter.

### C.

██ Petitioner also asserts that recently discovered documents show that the prosecution knew of Aceto's psychotic condition well before trial and that Aceto had been diagnosed as a delusional paranoid schizophrenic who received messages from his radio and television. Plainly, the documents showing this information are merely cumulative of impeachment that took place at trial. As this Court found in its post-trial opinion, Petitioner's expert, Dr. Brenner, analyzed the initial letter from

---

4. Petitioner has argued that his specific arguments concerning need for the transcript "are illustrative, not exhaustive, of the conflicts between what Aceto said under oath in this Court and what he said on tape barely two months earlier." To the extent that Petitioner wants the

transcript to show other inconsistencies, he should have specified what they are. Given the extent of the impeachment achieved at trial, the Court is not concerned that these unelaborated inconsistencies would have undermined its confidence in the outcome of the trial.

and testimony by Aceto's psychiatrist as indicating

> that Aceto was a victim of paranoid schizophrenia and that he was psychotic, delusional and probably paranoid and subject to hallucinations. He went on to testify that these conditions should be taken to have a severely adverse effect upon the reliability of Mr. Aceto's testimony and indicated that these conditions could well undermine his *ability* to tell the truth.

*United States v. Barrett*, 598 F.Supp. at 477 (emphasis in original).

■ Even though the recently discovered documents should have been disclosed if they were known to the prosecution, there is not a reasonable probability that, cumulative as they were, they would have changed the outcome of the trial. *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381.[5] As this Court found and the Court of Appeals affirmed, the exculpatory lead contained in the March 26th letter from Aceto's psychiatrist "was fully exploited by defense counsel and did in fact result in the production in the record of this case of most damaging evidence attacking Mr. Aceto's credibility." *United States v. Barrett*, 598 F.Supp. at 477; *see also, United States v. Barrett*, 766 F.2d at 616. Petitioner has shown no basis for relief based on undisclosed evidence.

### Ineffective Assistance of Counsel

■ Petitioner also argues that he was denied effective assistance of counsel. At trial Petitioner testified that he had shot a man in self-defense. Petitioner now characterizes presentation of that issue as an unreasonable tactical decision on the part of counsel. In rebuttal the Government introduced the coroner's report showing that the person killed by Petitioner had been shot in the back. Petitioner argues

counsel was also constitutionally deficient in failing both to anticipate the Government's rebuttal evidence and to prepare legal arguments to be able to counter it effectively. Specifically, Petitioner asserts that counsel should have relied upon Fed.R. Evid. 106 in argument to support introduction of material explanatory of that submitted by the Government.

The Supreme Court set forth the standard for proving ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

The Court went on to explain that

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Id.* at 690–91, 104 S.Ct. at 2066. The Court cannot find that counsel's decision to introduce the self-defense issue was constitutionally unreasonable. Petitioner concedes that the decision was "tactical." Although the Court of Appeals questioned whether such detail was necessary to make the point that Petitioner had no faith in the criminal justice system, counsel could well have decided that the jury would be more

---

5. Petitioner also suggests that he was harmed by the late production of documents and by Dr. Doe's invocation of the patient-physician privilege. The Court of Appeals has already determined that there was no prejudice to Petitioner from the invocation of the privilege. When an issue has been determined on direct appeal, the Court will not revisit it in the context of a

motion under section 2255. *Hunnewell v. United States*, 738 F.Supp. 582 (D.Me.1990), *aff'd*, 923 F.2d 839 (1st Cir., 1990); *Tracey v. United States*, 739 F.2d 679, 682 (1st Cir.1984). As is plain from the discussion in the text, there was also no prejudice from the timing of Petitioner's receipt of the medical information.

sympathetic to Petitioner if it heard the details of the killing from him. Such a decision is indeed strategic and, in the context of this most thoroughly-prepared trial, unchallengeable.

■ The major thrust of Petitioner's ineffective assistance claim centers on counsel's failure to argue Rule 106 as a basis for admitting the excluded portions of transcript from Petitioner's previous trial. The Court of Appeals ruled, on Defendant's direct appeal, that this Court's exclusion of the evidence "did not render the trial 'constitutionally unfair.'" *United States v. Barrett*, 766 F.2d at 619. As the Supreme Court stated in *Strickland*, in order to prove ineffective assistance of counsel, Petitioner must show that counsel's errors were "so serious as to deprive the defendant of a fair trial." The Court of Appeals has already determined, therefore, that Petitioner was not prejudiced by the result of what is now asserted as ineffective assistance of counsel. When an issue has been dispositively adjudicated on appeal, it is foreclosed and may not be renewed under section 2255. *Hunnewell v. United States*, 738 F.Supp. 582; *Tracey v. United States*, 739 F.2d at 682.

### Newly Discovered Evidence

■ Finally, Petitioner asserts that he should receive a new trial because two co-defendants, fugitives at the time of trial, have been captured and have submitted affidavits averring that they did not rob the bank with Petitioner. It is not clear that newly discovered evidence is a ground for § 2255 relief in this circuit. *Cruz–Sanchez v. Rivera–Cordero*, 835 F.2d 947, 948 (1st Cir.1987). In reviewing a state court denial of a motion for a new trial on the grounds of newly discovered evidence, the Court of Appeals stated: "It may be assumed that a compelling claim for relief might be presented when newly available evidence conclusively shows that a vital mistake had been made." *Grace v. Butterworth*, 586 F.2d 878, 880 (1st Cir.1978). In *Vega Pelegrina v. United States*, 601 F.2d 18, 19 (1st Cir.1979), however, the court treated a section 2255 motion as if it were a motion for a new trial filed under Fed.R.

Crim.P. 33, stating: "[T]hus we need not decide whether newly discovered evidence is a ground for § 2255 relief."

If newly discovered evidence were to serve as the basis for section 2255 relief, it seems clear that Petitioner would have to meet the standards set for granting a motion for a new trial based on newly discovered evidence. *See, Cruz–Sanchez v. Rivera–Cordero*, 835 F.2d at 948; *Lindhorst v. United States*, 658 F.2d 598, 602 (8th Cir.1981). In the First Circuit,

> [i]n order to be entitled to a new trial based on newly discovered evidence, the defendant must show: 1) the evidence was not known or available to the defendant at the time of trial; 2) the failure to discover the evidence was not due to lack of diligence on the part of the defendant; 3) the new evidence is material and not merely cumulative or impeaching; and 4) the evidence would probably produce acquittal upon retrial of the defendant.

*United States v. Benavente Gomez*, 921 F.2d 378, 382 (1st Cir.1990).

■ The new evidence proffered by Petitioner consists of affidavits of Thomas Manning and Raymond Levasseur who were both accused of committing the same bank robbery for which Petitioner was convicted. At the time of trial both Levasseur and Manning were fugitives. They were later apprehended and tried for other offenses for which they are now incarcerated. The affidavit of Levasseur states: "1. I did not rob the Northeast Bank in Portland, Maine with James Barrett. 2. I have never robbed any bank with James Barrett." Manning's affidavit contains the same language. A jury may believe one part of a witness's testimony and not another. *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir.1986). The affidavits, as currently structured, serve merely to impeach Joseph Aceto's testimony that Manning and Levasseur were participants in the bank robbery with him and Barrett. They do not address Aceto's testimony that Barrett robbed the bank and, thus, do not deal directly with Barrett's guilt or innocence. New evidence which is merely impeaching cannot be grounds for a new trial.

**666**

*United States v. Benavente Gomez*, 921 F.2d at 382 (1st Cir.1990).

If the affidavits had averred both that affiants were present at the bank robbery and that Petitioner did not participate, the Court might find it necessary to hold a hearing to determine the credibility of such statements. In certain very limited instances, such evidence might be of the type which would probably produce acquittal upon retrial. *Id.* at 382–83. However, the new evidence here presented does not meet that standard. The Court, therefore, need not address the underlying question whether section 2255 relief is available on the ground of newly discovered evidence.

Accordingly, the Court finds that an evidentiary hearing is not necessary in this matter. It is ORDERED that the Petitioner's Motion to Vacate Sentence be, and it is hereby, DENIED.

SO ORDERED.