USCA1 Opinion

 

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 96-2355

 UNITED STATES,

 Respondent, Appellee,

 v.

 JAMES BARRETT,

 Petitioner, Appellant.

 
 ____________________

 
 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge]

 ____________________
 
 Before

 Torruella, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 ____________________
 

 John G. S. Flym, with whom Liz Bostwick was on brief, for
appellant.
 Margaret D. McGaughey, Assistant U.S. Attorney, with whom
Jay P. McCloskey, U.S. Attorney, was on brief, for appellee.
 

 ____________________
 
 May 27, 1999
 ____________________ LYNCH, Circuit Judge. A federal prisoner/parolee,
convicted of a serious crime committed twenty-five years ago, seeks
to avoid the restrictions imposed by Congress in 1996 on successive
petitions for post-conviction relief and argues that it is illegal
and unconstitutional to deny him the ability to raise an argument
about the validity of his conviction that he could have raised
properly in 1990. He has not shown that he is actually innocent
and no claims of constitutional dimension are raised on these
facts. Under the various applicable gatekeeping mechanisms, which
augment society's interests in finality of criminal convictions
where there has been no miscarriage of justice, he has not
satisfied the preconditions in 28 U.S.C. 2255, as amended by the
Antiterrorism and Effective Death Penalty Act ("AEDPA"), that would
allow him to have the merits of his claim reviewed. He cannot
evade the restrictions of 2255 by resort to the habeas statute,
28 U.S.C. 2241, or the All Writs Act, 28 U.S.C. 1651. 
Resolution of this case involves exploration of the various
statutes and legal doctrines authorizing limited review of claims
for post-conviction relief. Our conclusion is that while there are
very rare circumstances in which review may exist even if the
requirements of 2255 have not been met, this case presents none
of those circumstances.
 James Barrett was convicted of a bank robbery in federal
court in 1984. He brought an unsuccessful appeal in 1984 and an
unsuccessful 2255 petition in 1990, and now seeks to bring
another petition attacking his conviction. The primary legal
questions presented in this case are whether the petition before us
is a "second or successive" 2255 petition, 28 U.S.C. 2255, and
whether Barrett may use 2241 or 1651 to bring a claim that
would otherwise be barred under 2255 and 28 U.S.C. 2244. Each
of these raises subsidiary questions; several are questions of
first impression for this circuit.
 I
 In 1975, three armed men wearing ski masks robbed a bank
in Portland, Maine. In 1984, James Barrett was tried for that
robbery. Barrett denied any involvement; the chief prosecution
witness, Joseph Aceto, said Barrett did participate in the robbery. 
The jury believed Aceto and not Barrett. Barrett was convicted and
sentenced to twenty years of imprisonment. Barrett promptly filed
post-trial motions for acquittal and a new trial, which the
district court denied. See United States v. Barrett, 598 F. Supp.
469 (D. Me. 1984). His conviction was affirmed on direct appeal. 
See United States v. Barrett, 766 F.2d 609 (1st Cir. 1985).
 In 1990, Barrett filed a petition under 2255 and then
amended it. The amended petition asserted claims under Brady v.
Maryland, 373 U.S. 83 (1963), for the failure to disclose various
documents, including a transcript of a government interview with
Aceto. In a reply brief, Barrett tried to characterize the failure
to disclose the transcript as a violation of the Jencks Act, 18
U.S.C. 3500, as well as a Brady violation. The district court
dismissed the petition without addressing the belated and informal
Jencks Act claim. See Barrett v. United States, 763 F. Supp. 658
(D. Me. 1991). This court affirmed the dismissal. See Barrett v.
United States, 965 F.2d 1184 (1st Cir. 1992).
 This appeal, Barrett's third trip to this court for
review of the 1984 conviction, concerns his efforts to raise anew
the Jencks Act claim that was adverted to in the reply brief. 
However, since Barrett's 1990 petition was decided, Congress has
enacted AEDPA, which places statutory restrictions on the filing of
second or successive petitions under 2255. Cutting through the
procedural morass presented, we find three essential questions for
us to resolve:
 1. Does Barrett present a "second or successive" 2255
petition, as that term is defined under the 1996 AEDPA amendments,
and, if so, is his petition barred because it does not meet AEDPA's
gatekeeper requirements?
 2. Does Barrett's claim fall within the savings clause
of 2255, which permits a petitioner to seek relief under 2241
if 2255 is "inadequate or ineffective to test the legality of his
detention"?
 3. Does the All Writs Act nonetheless provide Barrett
with a vehicle for raising his Jencks Act claim?
 The answer to the first question is yes, and the answer
to the second and third questions is no. We affirm the dismissal
of Barrett's petition.
 II
 We describe in detail the travel of the issues to this
court. In June of 1990, Barrett filed a pro se petition under
 2555 requesting that his sentence be vacated or set aside. The
court appointed counsel, different counsel than in the instant
petition. Five months after Barrett's petition was first filed, he
filed an amended habeas petition, with counsel's assistance,
alleging that the government had failed to disclose certain
evidence. Among that undisclosed evidence was a transcript of an
interview conducted in Arkansas by an FBI agent with Aceto, the
chief prosecution witness. This interview took place in the
presence of the prosecuting Assistant U.S. Attorney ("AUSA") on
January 26, 1984, about two months before Barrett's trial. Before
the trial, the government promised to disclose all prior statements
by Aceto and provided Barrett with a redacted summary of the
interview on FBI Form 302. But the government did not provide a
copy of the transcript, and that failure underlies the case before
us.
 Barrett's 1990 amended 2255 petition alleged that the
failure to provide the interview transcript violated Brady. On
January 4, 1991, the government responded to the amended petition;
included in its response was an affidavit from the AUSA who was
present at the interview -- a different AUSA than represents the
government before us now. The AUSA stated that the interview was
conducted to assist the FBI in its investigation of two other
suspected participants in the bank robbery, who were fugitives at
the time and were considered extremely dangerous. According to the
AUSA, since security concerns were very high he "never considered
the sensitive investigative information in the transcript as
discoverable."
 On February 19, 1991, Barrett filed "Plaintiff's Motion
for Leave to File a Brief Reply Memorandum," which asserted that
"several legal arguments and factual assertions raised by the
government . . . require a response from plaintiff." After the
district court granted this motion, Barrett filed a reply brief on
February 22, 1991; this brief raised for the first time a claim
that the failure to disclose the interview transcript violated the
Jencks Act. Barrett did not seek to amend his 2255 petition to
add this claim, and the government did not respond to it.
 On April 30, 1991, the district court dismissed the
amended petition without mentioning the Jencks Act claim. The
court did, however, extensively discuss the Arkansas interview
transcript in order to determine whether a constitutional violation
had occurred under Brady. See Barrett, 763 F. Supp. at 662-63. In
arguing to the district court that the government's failure to
produce the transcript made a constitutional difference, Barrett
raised several specific purposes for which he would have used the
transcript to impeach Aceto. See id. at 662. Applying the test
set forth in United States v. Bagley, 473 U.S. 667 (1985), which
states that "a constitutional error occurs, and the conviction must
be reversed, only if the evidence is material in the sense that its
suppression undermines confidence in the outcome of the trial," id.
at 678, the court addressed each of these purposes and concluded,
after careful analysis, that its "confidence in the outcome of the
trial [was] not diminished in any respect," Barrett, 763 F. Supp.
at 662-63. The court noted that "Aceto was thoroughly impeached by
far more substantial means: his mental illness, inconsistencies
between trial and previous testimony, his prior criminal behavior,
and his agreement with the government. Yet the jury believed him." 
Barrett, 763 F. Supp. at 663 (footnote omitted).
 After the district court issued this opinion, Barrett's
counsel filed an unsigned and undated motion for reconsideration on
the ground that the Jencks Act claim had not been addressed. That
motion was stricken on June 6, 1991 for failure to comply with
various applicable rules requiring counsel's signature. Two later
motions for reconsideration based on the same issue were filed and
denied.
 On appeal to this court from the denial of the 2255
petition, Barrett argued both the Jencks Act claim arising from the
failure to disclose the interview transcript and various Brady
claims. This court affirmed the dismissal of the Brady claims. 
See Barrett, 965 F.2d at 1188-92 & n.15. As to the Jencks Act
claim, this court held that the reply brief that first raised the
claim to the district court was not properly characterized as a
"traverse"; that the motions to reconsider were untimely under
Federal Rule of Civil Procedure 59(e); and that, if the motions for
reconsideration were considered Rule 60 motions, "petitioner would
fare no better, since the district court orders denying the motions
were never appealed." Id. at 1187-88 & n.3. Accordingly, this
court stated, "as a practical matter, petitioner's failure to raise
the Jencks Act claim in a timely manner below preclude[d] effective
appellate review on the merits." Id. at 1188.
 This court also suggested, "without deciding," several
concerns about any future attempts by Barrett to raise the Jencks
Act claim. First, we expressed doubts about the viability of such
a claim under 2255, given "the recognized rule that
nonconstitutional claims may not be presented in a section 2255
proceeding unless the claimed error of law [represents] a
fundamental defect which inherently results in a complete
miscarriage of justice." Id. (internal quotation marks omitted). 
Second, we stated that a future attempt to raise the Jencks Act
claim would be "a successive 2255 petition" subject to "abuse of
the writ" analysis. Id. at 1188 n.7 (citing McCleskey v. Zant, 499
U.S. 467 (1991)).
 The opinion of this court affirming the denial of the
 2255 petition was issued on June 8, 1992. Barrett did nothing to
pursue his Jencks Act claim for four years. On April 24, 1996,
AEDPA became effective. Barrett filed his current petition later
in 1996. AEDPA changed both the procedure for obtaining permission
to bring a "second or successive" 2555 petition and the
substantive standards that must be met to obtain such permission.
 III
AEDPA Standards
 Under AEDPA, a prisoner may file a second or successive
 2255 petition only if the court of appeals first certifies that
the petition is based on either:
 (1) newly discovered evidence that, if proven and viewed in
 light of the evidence as a whole, would be sufficient to
 establish by clear and convincing evidence that no reasonable
 factfinder would have found the movant guilty of the offense;
 or
 (2) a new rule of constitutional law, made retroactive to
 cases on collateral review by the Supreme Court, that was
 previously unavailable.
 
28 U.S.C. 2255 (cross-referencing to 2244 certification
requirements); see also id. 2244(b)(3)(A) (requiring
authorization by the court of appeals "[b]efore a second or
successive application . . . is filed in the district court");
First Cir. Interim Local Rule 22.2. "From the district court's
perspective," these pre-clearance provisions are "an allocation of
subject-matter jurisdiction to the court of appeals." Nunez v.
United States, 96 F.3d 990, 991 (7th Cir. 1996). Therefore, "a
district court, faced with an unapproved second or successive
habeas petition, must either dismiss it or transfer it to the
appropriate court of appeals." Pratt v. United States, 129 F.3d
54, 57 (1st Cir. 1997) (citations omitted), cert. denied, 118 S.
Ct. 1807 (1998).
 AEDPA also requires a "certificate of appealability"
("COA") for an appeal of the final disposition of a 2255
petition. See 28 U.S.C. 2253(c)(1) ("Unless a circuit justice or
judge issues a certificate of appealability, an appeal may not be
taken to the court of appeals from . . . the final order in a
proceeding under section 2255."); id. 2253(c)(2)-(3) ("A
certificate of appealability may issue . . . only if the applicant
has made a substantial showing of the denial of a constitutional
right. . . . The certificate of appealability . . . shall indicate
which specific issue or issues satisfy [this] showing . . . .");
Fed. R. App. P. 22(b). This court has interpreted these provisions
to permit the district courts to issue the requisite COAs, although
petitioners may seek supplemental COAs from the court of appeals in
certain circumstances. See Bui v. DiPaolo, 170 F.3d 232, 236-38
(1st Cir. 1999); Grant-Chase v. Commissioner, New Hampshire Dep't
of Corrections, 145 F.3d 431, 435 (1st Cir.) (noting that "every
court of appeals that has considered the question has concluded
that a district judge may issue a COA"), cert. denied, 119 S. Ct.
361 (1998).
Barrett's 1996 Petition
 These AEDPA provisions are applicable to our
consideration of Barrett's most recent petition. In the late
summer of 1996, Barrett petitioned "to set aside judgment of
conviction and for such other and further relief as this Court may
deem appropriate," styling his petition as brought pursuant to 28
U.S.C. 1651, 2241, 2255, and Article I, 9, clause 2 of the
Constitution. The magistrate judge issued an order returning the
petition on the ground that it was a "second or successive" 2255
petition that had not been pre-cleared by the court of appeals; the
district court, upon reviewing Barrett's objections, affirmed. 
Barrett appealed. After proceedings not here relevant, the
district court treated the notice of appeal as a request for a COA
and certified the following issue:
 Whether, in the circumstances of this case, the application of
 the provisions of the [AEDPA], which bar the filing of
 successive petitions under 28 U.S.C. 2255 absent an order of
 the Court of Appeals authorizing the District Court to
 consider the petition, so as to bar the filing of the petition
 herein, conflicts impermissibly with the All Writs Act, 28
 U.S.C. 1651, to deny Petitioner his federally protected
 rights of equal protection of the laws and of due process of
 law under the Fifth Amendment to the Constitution of the
 United States.

Barrett then filed an application for a COA in this court; we
stated that the appeal could proceed to briefing "[i]n view of this
court's recent decision [in Grant-Chase] concluding that when a
district court has granted a [COA] on an issue, an appellant is not
required to obtain a further certificate from this court with
respect to that issue."
 Given this procedural history, this court has
jurisdiction to consider all three essential issues, outlined
above, necessary to resolve Barrett's appeal. As to Barrett's
claim pursuant to 2255, our authority to consider the necessary
issues is similar to the Pratt court's. To the extent that Barrett
contends that AEDPA is not applicable to his claim, the district
court's order is appealable and a COA has issued regarding the
propriety of applying AEDPA. See Pratt, 129 F.3d at 57-58; see
also In re Davenport, 147 F.3d 605, 607 (7th Cir. 1998). To the
extent that there is a question regarding the applicability of the
"second or successive" provisions of AEDPA, we exercise our
discretion to construe this appeal as an application to us for pre-
clearance, and no COA is necessary. See Pratt, 129 F.3d at 58;
Pease v. Klinger, 115 F.3d 763, 764 (10th Cir. 1997) (per curiam). 
Finally, as to Barrett's claim that he should have been allowed to
proceed in the district court pursuant to 2241 or 1651, the COA
and pre-clearance requirements are not directly applicable. See
Davenport, 147 F.3d at 607; Valona v. United States, 138 F.3d 693,
694 (7th Cir. 1998); Triestman v. United States, 124 F.3d 361, 373
n.17 (2d Cir. 1997); McIntosh v. United States Parole Comm'n, 115
F.3d 809, 810 n.1 (10th Cir. 1997); Salaam v. United States, No.
98-CV-4244, 1998 WL 812634, at *2 (E.D.N.Y. Nov. 20, 1998). 
Barrett's underlying substantive claim under the Jencks Act is
therefore before us only to the extent that the nature of that
claim is relevant to the determination of whether there is a means
available for asserting it.
 IV
A. "Second or Successive" Petition Under 2255
 We begin by considering Barrett's claim under 2255. It
is clear that this provision is facially applicable to his
petition: he challenges the validity of his conviction; he is "in
custody"; his request for relief was made to the federal court
that sentenced him; and he himself invoked 2255 as a basis for
jurisdiction. See Valona, 138 F.3d at 694-95. The issue becomes
how his petition is affected by the "second or successive"
requirements applicable to 2255 petitions. Barrett makes three
general arguments. He says that this is really a first petition. 
Even if not technically a first petition, he says it should be
treated as one because he attempted to raise the Jencks Act claim
in his first petition. He also suggests that application of the
"second or successive" requirements would be impermissibly
retroactive and would raise constitutional problems.
Meaning of "Second or Successive" and the Abuse of the Writ
Doctrine
 As Barrett points out, AEDPA leaves the phrase "second or
successive" undefined. See Galtieri v. United States, 128 F.3d
33, 35 (2d Cir. 1997) ("[W]hen is a petition 'second or successive'
within the meaning of . . . [AEDPA?] Unfortunately, as with many
legal questions, the answer is: 'It depends.'"). However, there is
significant guidance as to whether Barrett's most recent petition
falls within the scope of AEDPA's "second or successive"
restrictions. As an initial matter, courts construing the phrase
have generally applied pre-AEDPA abuse of the writ decisions. See
Esposito v. United States, 135 F.3d 111, 113 (2d Cir. 1997) (per
curiam); Pratt, 129 F.3d at 60; Reeves v. Little, 120 F.3d 1136,
1138 (10th Cir. 1997) (per curiam). As was true pre-AEDPA under
the abuse of the writ doctrine, "a numerically second petition is
not 'second or successive' if it attacks a different criminal
judgment or if the earlier petition terminated without a judgment
on the merits." Pratt, 129 F.3d at 60; see also Esposito, 135 F.3d
at 113.
 Further definition is given in a series of post-AEDPA
decisions in this court and other courts of appeals. A petition is
not "second or successive" when a state petitioner whose first
petition was dismissed for failure to exhaust state remedies brings
a new petition based on exhausted claims. See Carlson v. Pitcher,
137 F.3d 416, 420 (6th Cir. 1998) ("[T]he very sound rationales
supporting this result are not altered by the additional
consideration that the second-in-time petition may contain new
habeas claims not presented in the first petition."); McWilliams v.
Colorado, 121 F.3d 573, 575 (10th Cir. 1997); In re Gasery, 116
F.3d 1051, 1052 (5th Cir. 1997) (per curiam); Christy v. Horn, 115
F.3d 201, 208 (3d Cir. 1997) (holding that the concerns of finality
and comity underlying the abuse of the writ doctrine "are not
implicated when a petition is filed after a prior petition is
dismissed for lack of exhaustion"); In re Turner, 101 F.3d 1323,
1323 (9th Cir. 1997) (per curiam) (noting that petitioner is
raising the same claims that he raised in the prior petition that
was dismissed for lack of exhaustion); Dickinson v. Maine, 101 F.3d
791, 791 (1st Cir. 1996) (per curiam); Camarano v. Irvin, 98 F.3d
44, 46 (2d Cir. 1996) (per curiam) ("[A]pplication of the
gatekeeping provisions to deny a resubmitted petition in cases such
as this would effectively preclude any federal habeas review and
thus, would conflict with the doctrine of writ abuse, as understood
both before and after Felker . . . . To foreclose further habeas
review in such cases would not curb abuses of the writ, but rather
would bar federal habeas review altogether."); cf. Denton v.
Norris, 104 F.3d 166, 167 n.2 (8th Cir. 1997) (remarking that
"[t]here may be circumstances in which the statute should not be
literally and woodenly applied"). These cases do not directly
apply to Barrett, who was convicted of a federal crime.
 Other decisions have created an exception for at least
three categories of cases: (1) where the earlier petition was
rejected for failure to pay the filing fee or for mistakes in form,
see O'Connor v. United States, 133 F.3d 548, 550 (7th Cir. 1998);
Benton v. Washington, 106 F.3d 162, 164-65 (7th Cir. 1996); (2)
where the earlier petition was labeled a 2255 petition but
actually was a 2241 petition challenging the execution rather
than the validity of the sentence, see Chambers v. United States,
106 F.3d 472, 474-75 (2d Cir. 1997); and (3) where the second
petition challenges parts of the judgment that arose as the result
of the success of an earlier petition, see, e.g., In re Taylor, 171
F.3d 185, 187-88 (4th Cir. 1999); Esposito, 135 F.3d at 113; Pratt,
129 F.3d at 61-62; Walker v. Roth, 133 F.3d 454, 455 & n.1 (7th
Cir. 1997) (per curiam); cf., e.g., Shepeck v. United States, 150
F.3d 800, 801 (7th Cir. 1998) (per curiam). These categories also
do not apply to Barrett.
 Barrett rather tries to build on the Supreme Court's
recent interpretation of the phrase "second or successive" in
Stewart v. Martinez-Villareal, 118 S. Ct. 1618 (1998). In Stewart,
the Supreme Court held that a petition was not second or successive
within the meaning of the AEDPA state habeas provisions when the
claim at issue had been raised in a previous petition but dismissed
by the district court as premature and unripe (although the
district court had resolved the ripe claims presented in the first
petition on their merits).
 [The most recent petition] may have been the second time that
 respondent had asked the federal courts to provide relief on
 his Ford claim, but this does not mean that there were two
 separate applications, the second of which was necessarily
 subject to [the second or successive provision]. There was
 only one application for habeas relief, and the District Court
 ruled (or should have ruled) on each claim at the time it
 became ripe. Respondent was entitled to an adjudication of
 all of the claims presented in his earlier, undoubtedly
 reviewable, application for federal habeas relief.
Id. at 1621. The Supreme Court compared the case before it to the
cases involving dismissals for nonexhaustion, and explained that
"[t]o hold otherwise would mean that a dismissal of a first habeas
petition for technical procedural reasons would bar the prisoner
from ever obtaining federal habeas review." Id. at 1622 (noting
that the Ford claim could not be decided at the time it was first
presented because petitioner's "execution was not imminent").
 The rationale of the Stewart decision does not help
Barrett, but reinforces that his claim does not fall within an
exception to the "second or successive" rule. Part of the Stewart
Court's rationale for finding that the previously premature claims
were not second or successive was that those claims "would not be
barred under any form of res judicata." Id. The core of the AEDPA
restrictions on second or successive 2255 petitions is related to
the longstanding judicial and statutory restrictions embodied in
the form of res judicata known as the "abuse of the writ" doctrine. 
As the Supreme Court noted in Felker v. Turpin, 518 U.S. 651
(1996), as to similar restrictions on 2254 petitions, "[t]he new
restrictions on successive petitions constitute a modified res
judicata rule, a restraint on what is called in habeas corpus
practice 'abuse of the writ.'" Id. at 664; see also O'Connor, 133
F.3d at 550 (stating that "the idea . . . is that a prisoner is
entitled to one, but only one, full and fair opportunity to wage a
collateral attack").
 Cases in which numerically second petitions have not been
treated as "second or successive" can be understood as describing
factual scenarios in which the application of a modified res
judicata rule would not make sense. See Vancleave v. Norris, 150
F.3d 926, 928 (8th Cir. 1998) (stating that Stewart recognizes
"that some types of 'second' petitions do not implicate the
judicially developed abuse-of-the-writ principles that were the
basis for AEDPA's statutory restrictions"); Camarano, 98 F.3d at
46-47 (analogizing to civil claim preclusion doctrine); 2 Liebman
& Hertz, Federal Habeas Corpus Practice and Procedure 28.3a, at
275 (2d ed. Supp. 1997) ("Applying the no-second-bite rule makes no
sense when a prior petition gave the prisoner what amounts to no
bite at the apple -- because the prior petition involved a
different apple, because no bite was taken when the apple
previously was before the court, or because no bite could have been
taken at that time because the claim had not yet come into
existence or would not have been cognizable at the time of the
earlier petition." (emphasis in original)); see also id. 28.3b,
at 1163-71 (3d ed. 1998). We do not purport to define the full
scope of the phrase "second or successive." However, as a general
matter, if a petition falls under the modified res judicata rule
known as the abuse of the writ doctrine -- because, for example, it
raises a claim that could have been properly raised and decided in
a previous 2255 petition -- it also falls within the definition
of "second or successive." Once the petition is defined as
"second or successive," review occurs only if certain requirements
are met.
Application to Barrett's 1996 Petition
 Applying these principles, we conclude that Barrett's
current petition is a "second or successive" one. This petition
does not fit into any of the exceptions described above: Barrett's
1990 petition, which was undisputedly brought pursuant to 2255,
was dismissed on the merits (although the Jencks Act claim was not
considered); his current petition challenges the same judgment that
was challenged in his 1990 petition; and there has been no new
judgment or amendment of sentence. See Thomas v.
Superintendent/Woodbourne Corr. Facility, 136 F.3d 227, 229-30 (2d
Cir. 1997) (per curiam). 
 Further, there is no question that Barrett's Jencks Act
claim was available and, unlike the Ford claim at issue in Stewart,
could have been both brought and adjudicated at the time of the
first petition. Barrett had the transcript of the interview with
Aceto at the time he brought the Brady claim in the 1990 petition. 
Although Barrett leans heavily on the contention that his Jencks
Act claim was not available until after the filing of the AUSA's
affidavit, which he characterizes as an admission of bad faith, it
cannot be that a Jencks Act claim asserting bad faith is
unavailable until there has been a direct admission from the
prosecutor -- a circumstance that is surely a rare one. Assuming
that the existence of bad faith was necessary in order to raise the
claim, Barrett had in front of him various facts from which he
could have marshaled a reasonable argument to that effect. Cf.
McCleskey v. Zant, 499 U.S. 467, 498-500 (1991) (explaining that
"cause" for the failure to raise a claim is not established if
"petitioner possessed . . . a sufficient basis to allege a claim in
the first petition and pursue the matter through the habeas
process" (citing 2254 provisions on discovery, expansion of the
record, and evidentiary hearing)). Indeed, Barrett's own brief to
us on this appeal seems to construct an argument -- that total
suppression is equivalent to willful destruction, which is
equivalent to an "elect[ion] not to comply" with the Act, 18 U.S.C.
 3500(d) -- that does not rely on any government admissions. See
Appellant's Brief at 26-27.
 Barrett now asserts that he should be excused from his
failure to raise the Jencks Act claim in his first petition
because, he says, filing such a claim prior to the submission of
the AUSA's affidavit would amount to a violation of Rule 11. That
is not so. See Fed. R. Civ. P. 11(b)(3) (stating that an attorney
presenting a pleading certifies that "to the best of the person's
knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances, . . . the allegations and other
factual contentions have evidentiary support or, if specifically so
identified, are likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery");
Navarro-Ayala v. Nunez, 986 F.2d 1421, 1425 (1st Cir. 1992);
Lancellotti v. Fay, 909 F.2d 15, 19 (1st Cir. 1990); see also 1
Liebman & Hertz, supra, 11.3b, at 488-89 (3d ed. 1998) ("[A]
reasonable, even if as yet unconfirmed, belief that a meritorious
fact-based claim exists may oblige the prisoner . . . to raise the
claim and to pursue it via, e.g., court-funded investigation . . .
, discovery, an evidentiary hearing, and other fact-development
procedures of the sort that often are not fully available to
prisoners until they file a habeas corpus petition. Thus, as
Justice O'Connor has stated, referring . . . to McCleskey, the
Court's 'carefully crafted doctrines of waiver and abuse of the
writ make it especially important that the first petition
adequately set forth all of a state prisoner's colorable grounds
for relief.'" (quoting McFarland v. Scott, 512 U.S. 849, 860
(1994) (O'Connor, J., concurring in the judgment in part))
(footnote omitted)); Rule 6 Governing Section 2255 Proceedings for
the United States District Courts.
 Further, even assuming that the AUSA's affidavit was more
than simply "evidence discovered later [that] might also have
supported or strengthened the [existing] claim," McCleskey, 499
U.S. at 498, Barrett also had the option of seeking to amend his
petition again to add the claim. See Fed. R. Civ. P. 15 (stating
that "leave [to amend] shall be freely given when justice so
requires"); Rule 12 Governing Section 2255 Proceedings for the
United States District Courts; United States v. Craycraft, 167 F.3d
451, 457 & n.6 (8th Cir. 1999); 2 Liebman & Hertz, supra, 28.1,
at 1145-46 (3d ed. 1998) ("If claims become available after the
habeas corpus petition is filed, the petitioner generally should
amend the new claims into the petition at the earliest possible
opportunity . . . ."). He did not even attempt to do so. Cf. In
re Hill, 113 F.3d 181, 183 (11th Cir. 1997) (per curiam) (stating
that "the liberal amendment policy applicable to habeas petitions
may make [new] claims . . . 'available' to the petitioner during a
prior habeas action, even when the claim would not have been
available at the inception of that prior action").
 Barrett also makes a separate argument. He argues that
the Jencks Act claim was in fact properly presented in his first
petition and that he should not be penalized for the failure of the
court to address it. While such a situation is conceivable, cf.
Wainwright v. Norris, 121 F.3d 339, 340-41 (8th Cir. 1997), it is
not the situation that we face here. This court has already
rejected Barrett's argument that he properly presented the Jencks
Act claim by traverse and has held that the district court did not
err in failing to rule on the claim. See Barrett, 965 F.2d at
1187-88 & n.3. Whether we consider this holding to be law of the
case or law of the circuit (indeed, we have relied on it in
subsequent opinions), Barrett's challenge to it, which largely
consists of citations to factually and legally distinguishable
cases, has not provided us with a rationale for disturbing our own
previous resolution of the issue. See Lacy v. Gardino, 791 F.2d
980, 984-85 (1st Cir. 1986); see also Shore v. Warden, Stateville
Prison, 942 F.2d 1117, 1123 (7th Cir. 1991); Aldridge v. Dugger,
925 F.2d 1320, 1326 (11th Cir. 1991); cf. Jeffries v. Wood, 114
F.3d 1484, 1492 (9th Cir.) (en banc), cert. denied, 118 S. Ct. 586
(1997); Singleton v. United States, 26 F.3d 233, 240 (1st Cir.
1994); United States v. Michaud, 925 F.2d 37, 43 (1st Cir. 1991).
 Barrett's Jencks Act claim was not dismissed without
prejudice when his first petition was decided, or missed through
some error of the court's. The situation presented here is
therefore equivalent to the common situation in which a petitioner
who has failed to raise an available claim in his first petition
attempts to raise that claim in a later petition. That situation
clearly falls within the "second or successive" rule, even though
the claim has never been adjudicated on the merits. See Pratt, 129
F.3d at 62 ("As a general rule, a prisoner who had both the
incentive and the ability to raise a particular claim in his first
petition for post-conviction relief, but declined to assert it,
cannot raise it the second time around."); see also Corrao v.
United States, 152 F.3d 188, 191 (2d Cir. 1998) ("Generally, a
 2255 petition is 'second or successive' if a prior 2255
petition, raising claims regarding the same conviction or sentence,
has been decided on the merits. This remains true even if the
latter petition purports to raise new claims." (citation
omitted)).
 As we stated in Pratt, 
 The requirement that all available claims be presented in a
 prisoner's first habeas petition is consistent not only with
 the spirit of AEDPA's restrictions on second and successive
 habeas petitions, but also with the preexisting abuse of the
 writ principle. The requirement serves the singularly
 salutary purpose of forcing federal habeas petitioners to
 think through all potential post-conviction claims and to
 consolidate them for a unitary presentation to the district
 court. This exercise advances the cause of judicial
 efficiency and further justifies barring [petitioner]'s second
 petition.
 
Pratt, 129 F.3d at 61. Accordingly, Barrett's 2255 petition is
"second or successive" within the meaning of AEDPA -- the result we
suggested in our previous, pre-AEDPA decision in this case. See
Barrett, 965 F.2d at 1188 n.7.
The Retroactivity Argument and the Pre-AEDPA Test
 Barrett contends that, even if we construe his petition
as a "second or successive" 2255 petition, he meets the
requirements for proceeding in the district court because the
restrictions in AEDPA on such petitions should not apply to him. 
Despite the instruction in Lindh v. Murphy, 521 U.S. 320 (1997),
that the provisions of AEDPA govern petitions filed after April 24,
1996, see id. at 326-27; Pratt, 129 F.3d at 58, Barrett ignores the
AEDPA amendments to 2255. Barrett instead confines his argument
to the terms of the test set forth in McCleskey v. Zant, 499 U.S.
467 (1991), which is less restrictive than the AEDPA amendments,
see Galtieri, 128 F.3d at 35-36; Benton, 106 F.3d at 163.
 Barrett attempts to justify his avoidance of AEDPA by
asserting that the 1996 amendments may not be applied
"retroactively" to him given that his first petition was brought
before the enactment of AEDPA. We construe his somewhat
abbreviated argument to be that he relied on the law as it existed
before AEDPA in his approach to the Jencks Act claim in his first
petition, and that this reliance interest deserves protection. We
have not adopted this so-called "mousetrapping" doctrine, see 
Burris v. Parke, 95 F.3d 465, 468-69 (7th Cir. 1996) (en banc), 
and do not do so now. As we did in Pratt, we will assume arguendo
that the doctrine is applicable and briefly consider whether
Barrett's claim meets the "notoriously difficult to pass" pre-AEDPA
test in order to determine whether Barrett may have somehow relied
on the prior state of the law. Pratt, 129 F.3d at 58-59; see also
United States v. Ortiz, 136 F.3d 161, 166 (D.C. Cir. 1998). 
 Under the pre-AEDPA test, a petitioner's failure to raise
a claim in a prior petition was excused in either one of two
situations. The first was where the petitioner "show[ed] cause for
failing to raise [the claim] and prejudice therefrom." McCleskey,
499 U.S. at 494; see also Andiarena v. United States, 967 F.2d 715,
717 (1st Cir. 1992). "Cause" is "some external impediment, such as
government interference or the reasonable unavailability of the
factual or legal basis for a claim." Andiarena, 967 F.2d at 718
(citing McCleskey, 499 U.S. at 497); see also Simpson v. Matesanz,
No. 98-2343, 1999 WL 257319, at *10-12 (1st Cir. May 4, 1999)
(citing Bousley v. United States, 118 S. Ct. 1604, 1611 (1998));
Whittemore v. United States, 986 F.2d 575, 578 (1st Cir. 1993). 
The second situation was a showing of a "fundamental miscarriage of
justice," defined as an "extraordinary instance[] when a
constitutional violation probably has caused the conviction of one
innocent of the crime." McCleskey, 499 U.S. at 494. "[T]he
miscarriage of justice exception is concerned with actual as
compared to legal innocence." Calderon v. Thompson, 118 S. Ct.
1489, 1502-03 (1998) (internal quotation marks omitted); see also
Simpson, 1999 WL 257319, at *10. To establish "actual innocence,"
a "petitioner must demonstrate that, in light of all the evidence,
it is more likely than not that no reasonable juror would have
convicted him." Bousley, 118 S. Ct. at 1611 (internal quotation
marks omitted).
 Here, for the reasons already explained, Barrett is
unable to demonstrate cause. He had the opportunity to raise his
claim properly at the time of his first petition, but he did not
take advantage of it. See McCleskey, 499 U.S. at 498-500. Whether
or not his failure to do so was intentional is of no moment. See
id. at 489-90 (holding that "a petitioner can abuse the writ by
raising a claim in a subsequent petition that he could have raised
in his first, regardless of whether the failure to raise it earlier
stemmed from a deliberate choice"); see also Wainwright v. Sykes,
433 U.S. 72, 85-90 (1977) (rejecting the "deliberate bypass"
standard articulated in Fay v. Noia, 372 U.S. 391 (1963)).
 Nor can Barrett demonstrate actual innocence. Despite
counsel's strong pronouncement at oral argument of Barrett's
innocence, Barrett's claim reduces to a complicated legal argument
(analogous to an argument for the suppression of evidence in the
Fourth Amendment context): that the Arkansas interview was Jencks
Act material; that the government "elect[ed] not to comply" with a
court order to turn it over and acted in bad faith; that the remedy
under the Act would be to strike Aceto's testimony in its entirety;
that without Aceto's testimony Barrett would not have been
convicted; and that Barrett's conviction is therefore faulty. 18
U.S.C. 3500(d); cf. Embrey v. Hershberger, 131 F.3d 739, 741 (8th
Cir. 1997) (en banc) ("[Petitioner] has conflated his gateway and
his ultimate legal claim . . . ."), cert. denied, 119 S. Ct. 78
(1998). Such an assertion of "legal" innocence is not sufficient. 
See Bousley, 118 S. Ct. at 1611 (stating that "'actual innocence'
means factual innocence, not mere legal insufficiency"). And it
has already been determined, through Barrett's prior petition, that
the evidence the government failed to produce was not material in
a constitutional sense -- that is, that it would not raise a
reasonable probability of a different outcome. See Barrett, 965
F.2d at 1188-93 & n.15; see also Calderon, 118 S. Ct. at 1503-04;
Burks v. Dubois, 55 F.3d 712, 718 (1st Cir. 1995). 
 Barrett has not demonstrated that there would be any
impermissible retroactive consequences to applying the AEDPA
restrictions to his current petition, even assuming arguendo that
is the proper test. Under these AEDPA restrictions, of course, we
reach the same conclusion that we reached under McCleskey. Barrett
has not argued that he satisfies either of the two AEDPA
preconditions for filing a second or successive 2255 petition,
and he patently does not. Therefore, we turn to whether this case
fits within the savings clause of 2255.
B. The Savings Clause in 2255: "Inadequate or Ineffective" 
 Remedy
 Since Barrett may not proceed with his 2255 petition,
we turn to his argument that the savings clause of 2255 permits
him to proceed under 2241 as a means of seeking relief. See 28
U.S.C. 2241 (stating that "[w]rits of habeas corpus may be
granted by the Supreme Court, any justice thereof, the district
courts and any circuit judge within their respective jurisdictions"
under specified circumstances).
 We begin with the limitation on the use of 2241
petitions by federal prisoners that is set forth in 2255: 
 An application for a writ of habeas corpus in behalf of a
 prisoner who is authorized to apply for relief by motion
 pursuant to [ 2255], shall not be entertained if it appears
 that the applicant has failed to apply for relief, by motion,
 to the court which sentenced him, or that such court has
 denied him relief, unless it also appears that the remedy by
 motion is inadequate or ineffective to test the legality of
 his detention.

This circuit has not previously defined the phrase "inadequate or
ineffective" or analyzed its scope.
 A petition under 2255 cannot become "inadequate or
ineffective," thus permitting the use of 2241, merely because a
petitioner cannot meet the AEDPA "second or successive"
requirements. Such a result would make Congress's AEDPA amendment
of 2255 a meaningless gesture. See, e.g., In re Davenport, 147
F.3d 605, 608 (7th Cir. 1998) ("Congress did not change [the
"inadequate or ineffective"] language when in the Antiterrorism Act
it imposed limitations on the filing of successive 2255 motions. 
The retention of the old language opens the way to the argument
that when the new limitations prevent the prisoner from obtaining
relief under 2255, his remedy under that section is inadequate and
he may turn to 2241. That can't be right; it would nullify the
limitations."); Triestman v. United States, 124 F.3d 361, 376 (2d
Cir. 1997) ("If it were the case that any prisoner who is prevented
from bringing a 2255 petition could, without more, establish that
 2255 is 'inadequate or ineffective,' . . . then Congress would
have accomplished nothing at all in its attempts -- through
statutes like the AEDPA -- to place limits on federal collateral
review."); In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997)
(stating that inadequacy or ineffectiveness cannot be established
"merely because th[e] petitioner is unable to meet the stringent
gatekeeping requirements of the amended 2255," because "[s]uch a
holding would effectively eviscerate Congress's intent in amending
 2255"); In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (en
banc) (stating that 2255 is not inadequate or ineffective simply
"because an individual is procedurally barred from filing a 2255
motion").
 Such a reading of the savings clause would also recreate
the serious structural problems that led Congress to enact 2255
in the first place. See In re Hanserd, 123 F.3d 922, 925, 934 n.19
(6th Cir. 1997) ("If [petitioner] and similarly situated inmates
proceed under habeas corpus [which must be brought in the district
with jurisdiction over the custodian], . . . courts located near
large federal prisons will be inundated with such motions, and
witnesses and court records will have to travel thousands of miles
to the situs of these habeas hearings, which would be held before
a judge unfamiliar with the case."); see also United States v.
Hayman, 342 U.S. 205, 210-14 (1952) (discussing the "practical
problems" that prompted the enactment of 2255).
 Yet the 2255 savings clause, which has been interpreted
to avoid constitutional questions about 2255, see Davenport, 147
F.3d at 609, must mean something. In three recent cases, the
Seventh, Third, and Second Circuits have addressed the meaning of
the "inadequate or ineffective" language and given it content. All
three cases involved a factual scenario in which the petitioner's
first 2255 petition had been resolved prior to the Supreme
Court's decision in Bailey v. United States, 516 U.S. 137 (1995).
Under Bailey's statutory interpretation, actions for which the
petitioner had been convicted were in fact not criminal at all, but
the petitioner's second petition, which raised a Bailey claim, was
barred by the AEDPA "second or successive" rules.
 In interpreting the savings clause, the Seventh Circuit
in Davenport looked to the essential function of habeas corpus. It
characterized that function as "giv[ing] a prisoner a reasonable
opportunity to obtain a reliable judicial determination of the
fundamental legality of his conviction and sentence." Davenport,
147 F.3d at 609. The court stated that a prisoner who "had a
chance to raise the question" at issue in his appeal and his first
 2255 petition had already had his reasonable opportunity, and did
not need another "procedural shot at getting his sentence vacated." 
Id. at 609-10 ("Society . . . is unwilling to expend indefinitely
large judicial resources on repeated testing of the accuracy of a
determination of guilt."). However, the court concluded that
 2241 was available where a Bailey claim simply could not have
been presented on direct appeal or in a first petition, stating
that "[a] procedure for postconviction relief can fairly be termed
inadequate when it is so configured as to deny a convicted
defendant any opportunity for judicial rectification of so
fundamental a defect in his conviction as having been imprisoned
for a nonexistent offense." Id. at 611; see also id. ("A federal
prisoner should be permitted to seek habeas corpus only if he had
no reasonable opportunity to obtain earlier judicial correction of
a fundamental defect in his conviction or sentence because the law
changed after his first 2255 motion.").
 The Seventh Circuit's holding in Davenport is very
similar to the Third Circuit's holding in Dorsainvil that 2241
relief is available in the "unusual circumstance" in which
application of the AEDPA "second or successive" limitations would
result in a "complete miscarriage of justice." Dorsainvil, 119
F.3d at 251 (internal quotation marks omitted). Like Davenport,
Dorsainvil stressed that the petitioner had not had an earlier
opportunity to raise his Bailey claim; the court also pointed out
that "[t]he government has not suggested that Dorsainvil has abused
the writ, the principal situation that the AEDPA was intended to
eliminate." Id. Further, the court emphasized that its holding
was a "narrow one" and was not intended to interfere with
application of the 2255 gatekeeping provisions. See id. at 251-
52 ("[A]llowing someone in Dorsainvil's unusual position -- that of
a prisoner who had no earlier opportunity to challenge his
conviction for a crime that an intervening change in substantive
law may negate, even when the government concedes that such a
change should be applied retroactively -- is hardly likely to
undermine the gatekeeping provisions of 2255.").
 Davenport and Dorsainvil are also similar to, but
distinct from, the Second Circuit's holding in Triestman that a
federal prisoner can seek 2241 habeas corpus in "the set of cases
in which the petitioner cannot, for whatever reason, utilize
 2255, and in which the failure to allow for collateral review
would raise serious constitutional questions." Triestman, 124 F.3d
at 377. The Triestman court found that such serious questions were
raised where "a person . . . can prove his actual innocence on the
existing record" and "could not have effectively raised his claim
of innocence at an earlier time." Id. at 363, 377-78; see also id.
at 368 n.8 (concluding that the petition at hand would not have
been barred under the pre-AEDPA "abuse of the writ" doctrine). 
"[T]he cases in which serious questions as to 2255's
constitutional validity are presented will be relatively few . .
. . In reaching this result, we therefore respect Congress' intent
to streamline collateral review and to discourage repetitive and
piecemeal litigation, while at the same time we give meaning to
Congress' express decision (reaffirmed in the AEDPA) to preserve
habeas corpus for federal prisoners in those extraordinary
instances where justice demands it." Id. at 377-78.
 To the extent that these cases were concerned with the
status of a petitioner's claim under pre-AEDPA abuse of the writ
law, they may have been narrowed, in effect, by the holding of the
Supreme Court in Bousley v. United States, 118 S. Ct. 1604 (1998). 
Bousley did not address the savings clause, but did hold on a
federal prisoner's first petition under 2255 that "cause"
excusing failure to make an argument was not shown by the
"futility" of the argument. See id. at 1611, cited in Simpson,
1999 WL 257319, at *11-12. But Bousley retained an actual
innocence exception and remanded the case so petitioner had the
opportunity to show his actual innocence. See id. at 1611-12.
 We agree with the Davenport, Dorsainvil, and Triestman
courts that habeas corpus relief under 2241 remains available for
federal prisoners in limited circumstances. See also In re
Hanserd, 123 F.3d at 929-30 (asserting without discussion that
"[i]f AEDPA bars [petitioner] from raising his Bailey issue in a
 2255 motion, he could file a habeas petition pursuant to [the
inadequate and ineffective] provision"); United States v.
Lorentsen, 106 F.3d 278, 279 (9th Cir. 1997) (suggesting that 
petitioner making a newly available Bailey claim could use 2241,
but not deciding the question because no request for 2241 relief
had been sought before the district court). But it is not
necessary in this case to articulate those circumstances precisely
-- we leave that task for another day. Applying any of the
appropriately narrow standards described above clearly demonstrates
that petitioner is not entitled to 2241 habeas relief in this
case.
 Barrett's claim does not raise a question of actual
innocence, as the post-Bailey claims of the petitioners in
Davenport, Dorsainvil, and Triestman arguably did. See Triestman,
124 F.3d at 378-79; cf. In re Jones, 137 F.3d 1271, 1273 n.3 (11th
Cir.) (per curiam), cert. denied, 118 S. Ct. 1351 (1998); McDonald
v. Bowersox, 125 F.3d 1183, 1186 (8th Cir. 1997) ("Accordingly, we
need not decide whether, and in what circumstances, a claim of
actual innocence can allow us to waive 2244(b)(2)'s requirements
for our approval of a successive habeas petition."); Bush v.
Singletary, 99 F.3d 373, 375 (11th Cir. 1996) (per curiam). 
Further, where a prisoner had an opportunity to present his claim
properly in his first 2255 petition, but failed to do so, any
"ineffectiveness" of his current 2255 petition is due to him and
not to 2255. See United States v. Walker, 980 F. Supp. 144, 146
(E.D. Pa. 1997); cf. United States v. Logan, 22 F. Supp. 2d 691,
694 (W.D. Mich. 1998) ("The Court concludes that any
'ineffectiveness' in this matter is attributable not to 2255, but
to Petitioner, for failure to file within [the AEDPA statute of
limitations] period."); Mejia v. INS, No. 97 C 6191, 1998 WL 26163,
at *2 (N.D. Ill. Jan. 16, 1998).
 Nor is a serious constitutional question raised by the
fact that AEDPA bars Barrett's claim from being heard on the
merits. We need not reach the issue of the extent to which a
Jencks Act claim may ever be of constitutional dimension. The
decision on Barrett's prior 2255 petition determined that the use
of the nondisclosed material would not have made a difference in
the outcome of the trial. Barrett could have raised his claim in
his first petition, and Congress may constitutionally treat "second
or successive" petitions differently than first ones. See Lonchar
v. Thomas, 517 U.S. 314, 323-25 (1996); cf. Davenport, 147 F.3d at
610. The Supreme Court has already determined that the AEDPA
"second or successive" restrictions applicable to 2254 do not
violate the Suspension Clause, and that reasoning is applicable
here. See Felker v. Turpin, 518 U.S. 651, 664 (1996) ("In
McCleskey . . . , we said that 'the doctrine of abuse of the writ
refers to a complex and evolving body of equitable principles
informed and controlled by historical usage, statutory
developments, and judicial decisions.' The added restrictions
which the Act places on second habeas petitions are well within the
compass of this evolutionary process, and we hold that they do not
amount to a 'suspension' of the writ contrary to Article I, 9." 
(citations omitted) (quoting McCleskey, 499 U.S. at 489, and citing
U.S. Const. Art. I, 9, cl. 2 ("The Privilege of the Writ of
Habeas Corpus shall not be suspended, unless when in Cases of
Rebellion or Invasion the public Safety may require it."))); see
also Graham v. Johnson, 168 F.3d 762, 787 (5th Cir. 1999); Green v.
French, 143 F.3d 865, 875-76 (4th Cir. 1998), cert. denied, 119 S.
Ct. 844 (1999); Ortiz, 136 F.3d at 168; In re Vial, 115 F.3d at
1197-98. Further, the restrictions at issue do not, under the
circumstances of this case, offend separation of powers principles
or the Article III grant of judicial power. Cf. Green, 143 F.3d at
875-76.
 Finally, and perhaps most tellingly, Barrett would not
have been able to proceed under the pre-AEDPA abuse of the writ
doctrine. Therefore, as Barrett implicitly acknowledges,
application of the AEDPA standards to bar his 2255 petition --
which would have been barred pre-AEDPA in any event -- does not
raise any serious constitutional question. See Davis v. Crabtree,
10 F. Supp. 2d 1136, 1141 (D. Or. 1998) (citing McCleskey, 499 U.S.
at 494-95, and Bousley, 118 S. Ct. at 1611-12); cf. Underwood v.
United States, 166 F.3d 84, 88 (2d Cir. 1999) ("The same
considerations that justify denial of relief under 2255 [and make
petitioner fail the pre-AEDPA abuse of the writ test] also require
that relief be denied under 2241. This is not a case, such as
Triestman, in which denial of collateral relief could require a
prisoner to serve a sentence for acts that have been ruled not to
constitute criminal conduct." (citation omitted)); Ortiz, 136 F.3d
at 169 ("Because Ortiz does not satisfy the standards for
successive 2255 motions in place prior to the enactment of AEDPA,
applying AEDPA to his motion cannot make him any worse off than he
was prior to its enactment.").
C. All Writs Act
 Finally, Barrett also argues that he may present his
claim as a writ of error coram nobis under the All Writs Act. He
may not.
 Barrett relies on United States v. Morgan, 346 U.S. 502
(1954), in which the Supreme Court stated that 2255 should not
"be construed to cover the entire field of remedies in the nature
of coram nobis in federal courts." Id. at 510. However, this
statement must be read in light of Morgan's broad concern about
whether any possibility of coram nobis survived the enactment of
 2255, a provision which was intended to "restate[], clarif[y] and
simplif[y] the procedure in the nature of the ancient writ of error
coram nobis," 28 U.S.C. 2255 Historical and Statutory Notes 1948
Enactment, and the enactment of Federal Rule of Civil Procedure
60(b), which "expressly abolish[ed] the writ of error coram nobis
in civil cases," Morgan, 346 U.S. at 505 n.4. Although the Court
concluded that coram nobis was available to the Morgan petitioner,
the Court did not hold that there are situations in which both
 2255 and coram nobis are applicable. The Morgan petitioner was
no longer "in custody," as is required in order to seek 2255
relief. See id. at 503-04.
 Indeed, as the Supreme Court noted in rejecting the use
of coram nobis in Carlisle v. United States, 517 U.S. 416 (1996),
"[t]he All Writs Act is a residual source of authority to issue
writs that are not otherwise covered by statute. Where a statute
specifically addresses the particular issue at hand, it is that
authority, and not the All Writs Act, that is controlling." Id. at
428-29 (quoting Pennsylvania Bureau of Correction v. United States
Marshals Serv., 474 U.S. 34, 43 (1985)) (internal quotation marks
omitted); see also Aetna Cas. & Sur. Co. v. Markarian, 114 F.3d
346, 350 (1st Cir. 1997) ("The All Writs Act does not authorize
[federal courts] to issue ad hoc writs whenever compliance with
statutory procedures appears inconvenient or less appropriate." 
(internal quotation marks omitted)).
 Barrett asserts that no statute, "other than the Jencks
Act and statutory provisions governing direct appeals,"
specifically addresses the particular issue at hand in his case. 
However, 2255 is applicable to Barrett, and the statute
specifically addresses this situation by barring Barrett's second
 2255 petition. See, e.g., United States v. Brown, 117 F.3d 471,
475 (11th Cir. 1997); United States v. Kindle, 88 F.3d 535, 536
(8th Cir. 1996) (per curiam). 
 That 2255 does not provide Barrett with a means to
obtain the relief he seeks does not mean that it is not a
"controlling" authority for the purposes of determining whether the
All Writs Act applies. The fact that 2255 bars his second
petition at its inception does not make that provision any less
controlling. In Carlisle itself, the Court forbade the use of
coram nobis to circumvent Rule 29, Fed. R. Civ. P., despite the
fact that application of that rule meant that the defendant's
motion for a judgment of acquittal was untimely and should have
been rejected immediately by the district court without any
consideration of the merits or any grant of relief. See Carlisle,
517 U.S. at 428-29, 433; see also Aetna Cas. & Sur. Co., 114 F.3d
at 350 (finding use of the All Writs Act inappropriate where Rule
69(a) had been consistently interpreted to block plaintiff's
claim); Ex parte Farrell, 189 F.2d 540, 545 (1st Cir. 1951) ("Where
the appeal statutes establish the conditions of appellate review
[such as timeliness], an appellate court cannot rightly exercise
its authority to issue a writ under the 'all writs' section, 28
U.S.C. 1651, the only effect of which would be to avoid those
conditions and thwart the congressional policy. For us to grab
hold of the present case under 28 U.S.C. 1651 would not be in aid
of our appellate jurisdiction . . . , but would be a palpable
evasion of the statutory conditions which Congress has seen fit to
impose . . . ."). The writ of coram nobis may not be used to
circumvent the clear congressional directive embodied in the
"second or successive" provisions of 2255, which are themselves
a sort of "timeliness" requirement. See, e.g., United States v.
Damiano, No. CRIM. 90-00488-01, 1997 WL 539704, at *2 (E.D. Pa.
Aug. 6, 1997) ("[T]he [AEDPA] limits the ability of a petitioner to
obtain relief in later Section 2255 motions and encourages all
petitioners to include all of their claims of error in their first
motion. For this reason, given the broad purpose of the Act, it
would be astounding if [the "second or successive" restrictions]
could be rendered wholly ineffective by the simple ruse of labeling
future 2255 motions as petitions for writs of coram nobis.");
Bennett v. United States, No. 87 CR 874, 1997 WL 285987, at *2
(N.D. Ill. May 22, 1997) ("[Section] 2255 is not unavailable to
[petitioner]; it just offers him no relief from his sentence.");
see also, e.g., United States v. Bailey, No. 97 C 7665, 94 CR 481,
1997 WL 757869, at *2 (N.D. Ill. Nov. 26, 1997) (applying the same
rule in a case involving the AEDPA statute of limitations).
 It may be that there are situations in which 2255 is
not "controlling" despite the fact that the petitioner remains in
custody -- for instance, where 2255 is "inadequate or
ineffective." See Triestman, 124 F.3d at 380 n.24; see also United
States v. Ransom, 985 F. Supp. 1017, 1019 (D. Kan. 1997). But we
have no cause to explore those potential situations in this case,
since 2255 is not "inadequate or ineffective" and so plainly
"specifically addresses" the situation that we face. Carlisle,
517 U.S. at 429 (internal quotation marks omitted); see also
Davenport, 147 F.3d at 608 ("[I]f Congress has forbidden federal
prisoners to proceed under 2241 even when 2255 is closed to them[,]
then it would be senseless to suppose that Congress permitted them
to pass through the closed door simply by changing the number 2241
to 1651 on their motions.").
 The scope of relief obtainable under the All Writs Act is
narrowed when a statute governing a particular issue is enacted. 
Here 2255, as amended by AEDPA, governs. There is no contention
that the AEDPA provisions themselves have somehow amended the All
Writs Act. We conclude merely that Barrett is not permitted to
proceed with a 1651 petition under the circumstances of this
case. For the reasons already discussed, barring Barrett's
petition does not present any constitutional difficulties.
 V
 We have considered Barrett's remaining arguments; they
are without merit. See United States v. Bongiorno, 106 F.3d 1027,
1034 (1st Cir. 1997) (explaining that this court has "steadfastly
deemed waived issues raised on appeal in a perfunctory manner, not
accompanied by developed argumentation"). Despite Barrett's
liberal invocation of federal constitutional principles, this case
is in the end simply an example of a garden-variety abuse of the
writ -- an abuse that would have been forbidden prior to the
enactment of AEDPA and is most certainly barred by AEDPA's more
stringent provisions. See Pratt, 129 F.3d at 63 ("[Petitioner]
failed to marshal all his claims of error in his first section 2255
petition, and he must now pay the piper. AEDPA governs here, and,
on the facts of this case, AEDPA's clear language prohibits
[petitioner] from rectifying his omission by means of a second
petition."); cf. Calderon, 118 S. Ct. at 1502; McCleskey, 499 U.S.
at 491-93.
 The lessons of this case for the criminal defense bar are
clear. A first petition for post-conviction relief under 2255
should raise all available claims. Informal reference to a new
claim in a reply brief will not suffice to raise a claim if the
district court does not address that claim in its order. Failure
to raise an available claim does not permit an end-run around the
requirements of 2255 by resort to 2241 or the All Writs Act. 
There is only one bite at the post-conviction apple unless a second
or successive petition can show one of two things: a new rule of
constitutional law, made retroactive to cases on collateral review
by the Supreme Court, that was previously unavailable, or newly
discovered evidence sufficient to establish by clear and convincing
evidence, on the whole record, that no reasonable factfinder would
have returned a guilty verdict. A claim of actual innocence --
defined as factual innocence, not mere legal insufficiency -- will
have a mechanism for review.
 We therefore affirm the district court's dismissal of
Barrett's petition. Barrett's appeal is also treated concurrently
as a request for leave to file a second or successive habeas
petition and that request is denied.